BLAIR & Co., INCORPORATED, Respondent, *v.* CARLOS OTTO V. et al., Appellants.

First Department, March 4, 1958.

*Arthur G. Warner* of counsel (*Jules Schlossberg* and *James E. Birdsall* with him on the brief; *Warner, Birdsall & Anfuso,* attorneys for Carlos Otto V. and another; *Schlossberg & Siegel,* attorneys for Louis Wortman and others; *Carl Golden,* attorney for Stanley Ross), for appellants.

*Victor House* of counsel (*Imre Rochlitz* with him on the brief; *Bennet, House & Couts,* attorneys), for respondent.

BREITEL, J. P. Defendants appeal from denial of their several motions to dismiss the complaint on the ground of legal insufficiency. Plaintiff sues to recover compensation for services in connection with the promotion of oil concessions in Venezuela. The case involves the effect of a subsequent agreement on the right of plaintiff to recover on an earlier agreement, plaintiff asserting that the later agreement constituted no more than an executory accord, without satisfaction. Defendants contend, on the other hand, that the complaint shows, as a matter of law, that the later agreement is not an accord but a substituted agreement which extinguished the old.

It is concluded that the complaint is insufficient and that it should be dismissed, but with leave to plaintiff to serve an amended pleading, if it be so advised.

Plaintiff Blair is engaged in the business of financing and arranging for the financing of business promotions. The

individual defendants, the Otto group, were promoters of oil concessions in Latin America. On November 11, 1955 the Otto group and Blair entered into a memorandum agreement whereby Blair agreed to assist in the financing of oil concessions to be obtained by the Otto group, and, in exchange therefor, Blair was to receive 30% of the net profits derived from such concessions. Thereafter, the Otto group obtained concessions in Venezuela, but took them in the name of a corporation, the Venezuelan American Independent Oil Producers Association, Inc., referred to by the parties as VAIOPA. With the assistance of Blair, one of these concessions was transferred to an affiliate of the Atlantic Refining Company, namely, the Venezuelan Atlantic Refining Company, referred to by the parties as VARCO. VARCO entered into an agreement with VAIOPA, so that VAIOPA was to receive the compensation derived from the concession transferred to VARCO.

According to the complaint, by October, 1956 the Otto group had failed to make the payments due Blair and had refused to account for revenues received from the oil concession. Blair alleges that while the parties were in dispute with respect to their respective rights and obligations, especially as to allocable expenses, and, in order to avoid litigation, a new arrangement was entered into. This new arrangement constitutes the subsequent agreement which bases the issue involved in this case.

The October, 1956 arrangement — the subsequent agreement — consists of two documents, both annexed to the complaint and included by reference. Under the main agreement it is provided that VAIOPA shall pay $37,500 to Blair. In addition, it is provided that Blair shall receive an overriding commission of $1\frac{1}{4}\%$ of the sales price of another concession if VAIOPA sells this concession to an operating company introduced by Blair. If the concession is not sold in this manner by a certain date, then, instead of the $1\frac{1}{4}\%$ commission, VAIOPA is to pay Blair a further lump sum of $37,500. These payments were to be made in lieu of the obligations of the Otto group. It was provided that " the payments * * * shall constitute complete satisfaction " for services rendered, past and future, by the Blair group with respect to promoting the concessions. Thus it will be seen that in addition to liquidating the amounts in controversy between the Otto group and Blair, and substituting the VAIOPA corporation as obligor in place of the Otto group, the agreement rearranged the percentage commissions that Blair would receive, distinguishing the situation in which it assisted in the promotion from that in which it did not. Besides this agreement, on the same

date, the parties executed a further document which, addressed to the Otto group by Blair, reads as follows:

"We refer to the Agreement dated November 11, 1955 to which you and ourselves were parties. This is to advise you that we no longer have any interest in such Agreement and shall not have any liability thereunder.

"Your approval at the foot hereof shall constitute an agreement to such effect between us."

These, then, are the documents, made a part of the complaint, from which the court is required to determine whether an intent was manifested to substitute the new agreement for the old by way of novation, or whether the new agreement was merely conditional, in which event a failure to perform by VAIOPA would entitle Blair to sue on the original 1955 agreement. It is also alleged in the complaint that the fixed payments, totalling $75,000, required by the 1956 agreement were not made by VAIOPA, except as to the sum of $37,500 which was paid late.*

There is, however, in the complaint, apparently in an effort to offset the documentary discharge of the old agreement, a conclusory allegation that the later agreements "provisionally waived" rights under the prior agreement and a passing reference to the subsequent agreement as an "accord". But there are no ultimate facts alleged establishing the "provisional" character of the subsequent agreement or that the parties intended that the subsequent agreement should not finally discharge and satisfy the prior agreement. Nor are there any allegations, by way of ultimate facts, that would vary the impact of the language contained in one of the subsequent writings which, prima facie, terminates the rights and obligations of the parties to the original agreement.

Thus, the question squarely raised on this appeal is whether on the complaint, the documents having been incorporated, plaintiff Blair is entitled to sue on the original agreement. Blair contends that the subsequent agreement amounts to no more than an executory accord, rather than a substitution of a new contract, and that, since the later agreement was not fully performed, it is entitled to recover on the original agreement. Defendants, the Otto group, on the other hand, contend that the subsequent agreement constituted the substitution of an entirely new contract, and that the old agreement was fully

---

* This payment was made pursuant to another document, executed between Blair and VAIOPA, the substituted obligor under the 1956 agreement, dated in January, 1957. This document extended the time for payment of the balance and reaffirmed the 1956 agreement.

discharged and satisfied by the execution of the new and subsequent agreement.

What is substantially involved is that Blair now seeks to reinstate itself as a 30% participating member in the joint venture as originally constituted by the prior agreement. Otherwise, Blair would be limited to an action on the subsequent agreement, against VAIOPA, and not the individual defendants in this case; and as events have turned out, Blair could not recover more than the additional unpaid balance of $37,500.

There is no doubt that the decisional law prior to the enactment of section 33-a of the Personal Property Law, and the law as it is today, following the enactment of that section, is substantially the same with regard to the effect of an agreement made between the same parties to dispose of an earlier obligation, namely, that the subsequent agreement does not discharge the obligations created and unperformed under the prior agreement unless it was so intended. (See, generally, 1937 Report of N. Y. Law Rev. Comm., pp. 209–248.) The question is always one of intention as manifested by the parties in their writings and their conduct.* The conduct of the parties in this case, and more especially the documents executed by them, establish, at least insofar as the present pleading shows, that the prior agreement was wholly terminated and dissolved, as a matter of intention, expressed in so many words.

In *Moers* v. *Moers* (229 N. Y. 294), a leading case in this area, the tests to be applied in determining the effects of a subsequent agreement were explicitly set forth: " The contract in the instant case is not a mere accord, or an accord executory. It is a new and superior contract superseding and extinguishing the contract or contracts upon which the original action between the parties was based, and the action itself. It relates to matters of differences and controversies other than, as well as, those involved in the original action. It concerns all the claims and grievances of the plaintiff against the defendant and of the defendant against the plaintiff. Each party enters into new agreements and assumes new obligations. Mutual releases shall be executed extinguishing all disputes and controversies between them. Those new and reciprocal covenants and obligations were considerations legally sufficient to invest the contract with completeness and binding effect. It is imma-

---

* For a fuller discussion of the controlling significance of intention, see *Goldbard* v. *Empire State Mut. Ins. Co.* (5 A D 2d 230), simultaneously decided by this court, in which it was held that no substitution agreement had been intended.

terial that certain obligations on the part of the defendant were to be performed ' upon the receipt of said $12,500,' or ' contemporaneously with the receipt of said sum of $12,500.' Refusal by the defendant to receive the moneys accomplished nothing. It did not extinguish her agreements or absolve her from the obligations they created. It is enough that the agreements of the parties were new or created by the contract, were absolute and not dependent or conditional, were reciprocal and affected legal rights of either or both of the parties — a case of mutual promises, one of which is the consideration for the other." (Pp. 300–301.)

In commenting on this case, the Law Revision Commission in its report (1937 Report of N. Y. Law Rev. Comm., pp. 209–248, 219) said: " A strong argument can be made for the thesis that when new matters are embraced within the subsequent agreement, the agreement itself and not its performance is regarded as the contemplated satisfaction. In other words, that the new agreement is substituted for the existing obligation with the intent of discharging that obligation."

The commission also expressed a caveat with respect to the sweeping language of the court, but the qualification — and its report so indicates — would not detract from its general validity in application to this case. (*Ostrander* v. *Ostrander,* 199 App. Div. 437, 439; Restatement, Contracts, §§ 408, 418, 419.)

Applying first the tests suggested by *Moers* v. *Moers* (*supra*) with the caveat, however, of the Law Revision Commission in mind, there is nothing missing. Certainly the subsequent agreements covered all the differences and controversies between the parties. Indeed, the proposed payments were " In full for all services rendered by you [referring to Blair] * * * individually or on your behalf, to date and for all services which may be rendered in the future in connection with the aforesaid concessions." Moreover, Blair received a promise for the payment of liquidated amounts on the concessions already sold and a further promise for a percentage override, if the new concession then being promoted was sold to one introduced by Blair, and a stipulated amount if, it was not so sold. It also obtained the promise of a " reasonable first opportunity " in respect to exploiting such other concessions which might be awarded to VAIOPA. But, most important, Blair received a promise to pay from the corporation that held the one vital asset, the operating contract with VARCO. This substitution of obligors is not minimized by

the fact that VAIOPA is alleged to have been the creature corporation of the Otto group. There are no allegations in this pleading which would entitle Blair to "pierce the corporate veil," nor is there any claim to that effect on this appeal.

All this Blair received in exchange for a disputed claim of a 30% interest in a joint venture, subject to unitemized expenses, that to date had sold only one concession, and which could be dissolved before any further projects were pursued or obtained. (Restatement, Contracts, § 419,* incl. comment *a*, and illustration 2; see *Spier* v. *Hyde*, 78 App. Div. 151, 157–158.)

But one is not left merely to apply the tests suggested in the *Moers* case (*supra*). Were that the case, one might, indeed (despite the rule of the *Moers* case), agree with plaintiff Blair that only the "payments" rather than the promises thereof would satisfy the pre-existent obligations — if it were in fact true that the 1956 agreement consisted of but one document making that slender reference. But the parties executed on the same date the second document as part of that agreement. Its language is clear and unmistakable. It cannot be ignored. It says, in so many words, that Blair no longer has any interest in the 1955 agreement and, even more important, that it no longer has any liability thereunder. It is difficult to think of any additional language which could have been supplied by the draftsman to say that the prior agreement was terminated and discharged in exchange for the substituted agreement with its new obligations and its new obligor. Nor should the emphasis given these provisions by the parties by setting them forth in a separate document be ignored. It is this document, even more than the application of the tests in the *Moers* case (*supra*) that determines the question presented to the court (1937 Report of N. Y. Law Rev. Comm., p. 218, and the many cases on expressed intent cited in n. 23).

Surely, courts have occasion enough to assume the perils of construction, where ambiguity is present. One should recognize and accept the occasion when the parties have said their piece in the clearest language. Agreeing with all of the statements of applicable law urged by Blair is not to escape the conclusion

---

* The black letter reads as follows: "Where a contract is made for the satisfaction of a pre-existing contractual duty, or duty to make compensation, the interpretation is assumed in case of doubt, if the pre-existing duty is an undisputed duty either to make compensation or to pay a liquidated sum of money, that only performance of the subsequent contract shall discharge the pre-existing duty; *but if the pre-existing duty is of another kind, that the subsequent contract shall immediately discharge the pre-existing duty, and be substituted for it.* [Emphasis supplied.]

on the pleading that Blair agreed in writing that the old agreement was dead and the new one, with its promises, was the one that henceforth was to govern, exclusively, the relations of the parties. This is especially true when the parties to a novation accept benefits thereunder, as occurred here (*Schloss Bros. & Co. v. Bennett,* 260 N. Y. 243, 249–250).

This analysis does not mean, however, that, with appropriate and admissible allegations of ultimate fact, plaintiff Blair might not, on the present or some other legal or equitable theory of relief, raise an issue of fact with respect to the intention of the parties at the time the subsequent agreement was made. On this the court may not now pass, but for this reason plaintiff should be granted leave to replead.

Accordingly, the orders should be reversed, on the law, and the motions to dismiss the complaint for insufficiency granted, with costs and disbursements to defendants-appellants, with leave, however, to plaintiff to serve an amended complaint setting forth any ultimate facts, if it can and is so advised, which avoid or assist in the interpretation of the documents incorporated by reference in the complaint, or to set forth any other cause of action relating to the stripping of VAIOPA of its assets by defendants, as is also incidentally, but incompletely, alleged in the complaint.

RABIN, J. P., McNALLY, BERGAN and BASTOW, JJ., concur.

Orders unanimously reversed on the law, with $20 costs and disbursements to the appellants, and the separate motions to dismiss the complaint for insufficiency granted, with leave, however, to the plaintiff to serve an amended complaint in accordance with the opinion of this court, if so advised. Settle order.