■ NORTHVILLE INDUSTRIES CORP., Respondent, v FORT NECK OIL TERMINALS CORP., Appellant, et al., Defendant. — In an action, *inter alia*, to recover damages for breach of contract, defendant Fort Neck Oil Terminals Corp. (hereinafter Fort Neck) appeals from a judgment of the Supreme Court, Suffolk County (McCarthy, J.), entered December 21, 1982, which, upon a jury verdict, is in favor of the plaintiff and against it in the principal sum of $430,143, with interest from February 3, 1979. ¶ Judgment reversed, on the law, with costs, Fort Neck's motion for summary judgment granted, and

complaint dismissed as to it. ¶ This action arises from a contract whereby defendants Fort Neck and Slomin's, Inc. (hereinafter Slomin's), affiliated New York corporations engaged in the business of selling, storing, transporting and distributing petroleum products in the Long Island area, agreed to sell up to 150,000 barrels (6,300,000 gallons) of number 2 home heating oil to the plaintiff Northville Industries Corp. (hereinafter Northville). At the time of this agreement, Fort Neck had a contract with the Asiatic Petroleum Corporation (hereinafter Asiatic), later renamed Scallop Corporation, for the sale of 1,200,000 barrels of number 2 heating oil during the two consecutive winter periods beginning on October 1, 1977 and terminating on March 31, 1979. Pursuant to subdivision 2 (par [c], cl [ii]) of the agreement between Fort Neck and Asiatic, Fort Neck was obliged to take delivery of the oil at the rate of 150,000 barrels during each of the months of November, January, February and March of the winter periods. ¶ During the 1978-1979 season, Fort Neck had a terminaling agreement with Northville whereby the former was allowed to store up to 240,000 barrels of oil at Northville's facility during January, 1979. The amount in storage had to be reduced to 190,000 barrels by February 1, 1979. At the end of 1978, Fort Neck had in excess of 228,000 barrels stored at Northville's terminal. Faced with the prospect of having to purchase a quantity of oil from Asiatic in January, 1979 with limited available storage space, Fort Neck entered into negotiations with representatives of Northville concerning the sale of surplus oil to Northville. An oral agreement was reached between Fort Neck's vice-president, Edward Slomin, and Anthony Demsieski, Northville's distribution and supply manager, whereby Northville agreed to purchase up to 150,000 barrels of number 2 oil from Fort Neck at 42.625 cents per gallon, provided that delivery was made in January, 1979. According to Demsieski, it was agreed that Slomin would draw up a contract confirming the aforesaid agreement which had been made by telephone. ¶ Fort Neck thereafter sent Northville a letter dated January 10, 1979 confirming its agreement "to sell up to 150,000 Barrels (6,300,000 Gallons) of #2 oil of Northville at Port Jefferson during January, 1979" at a price of $.42625 per gallon. The agreement was specifically conditioned upon the ability of Fort Neck to procure the above-mentioned quantity of oil from its supplier Asiatic at a price not to exceed $.4225 per gallon. The Northville representative never contacted the drafter in order to discuss the written confirmation inasmuch as he construed the phrase "*up to* 150,000 Barrels" (emphasis supplied) as "just another way of saying approximately". ¶ As of early February, 1979, Fort Neck had only delivered approximately 26,000 barrels of number 2 oil to Northville. Fort Neck's position was that it was unable to make any further deliveries on its contract with Northville inasmuch as Asiatic had failed to deliver the full January allotment and the month was already over. The parties then arranged a meeting in order to resolve their dispute and continue their long-standing business relationship. Subsequently an agreement was entered into between Northville and the defendants Fort Neck and Slomin's on February 15, 1979, affording Northville an option to purchase 'the excess oil inventory of the defendants prior to 11:59 P.M. on April 30, 1979. The defendants agreed to exercise their best efforts to ensure that all number 2 heating oil due to be received by them prior to that date be delivered. In the event that the defendants were to take any actions to delay or divert deliveries of number 2 heating oil subject to Northville's option under the agreement, Northville's sole remedy would be an entitlement to exercise its option thereunder as if the delay or diversion caused by defendants had not occurred. ¶ The final clause of the option agreement of February 15, 1979, appearing just above the signature of Northville's vice-president, Jerome S. Border, provided as follows: " 8. *Effect on Other Agreements:* This Agreement shall be in lieu of and shall supersede

any other agreements existing as of the date hereof between Fort Neck or Slomin's and Northville relating to the purchase by Northville of No. 2 heating oil". ¶ Northville thereafter took the position that the February 15, 1979 agreement was never intended as a settlement of any claims or disputes under any pre-existing contract. Northville moreover introduced portions of an examination before trial of Fort Neck's principal, Edward Slomin, to the effect that the February agreement was not intended to "make amends for the January 10th agreement", nor was it "designed as an offset against any other agreement". Northville introduced no testimony, however, as to what subdivision 8 of the February 15, 1979 agreement did in fact mean. ¶ On January 8, 1981, Northville commenced this action against Fort Neck and Slomin's, *inter alia,* to recover damages for breach of both the January and February agreements. Prior to trial, Northville withdrew all causes of action except for the first, alleging breach of Fort Neck's January 10, 1979 agreement to sell Northville 150,000 barrels of number 2 heating oil. Fort Neck thereupon moved for summary judgment dismissing the complaint on the ground that the February 15, 1979 agreement released and extinguished any claims that might arise out of the January 10, 1979 agreement. The court denied the motion on the ground that there were questions of fact with respect to whether subdivision 8 of the February 15, 1979 agreement had the legal effect which Fort Neck contended. The matter proceeded to trial and resulted in a verdict for Northville against Fort Neck in the principal sum of $430,143. ¶ Without addressing Fort Neck's contentions regarding the errors allegedly committed by the trial court, we conclude that it was error for the court to have denied the motion for summary judgment. Notwithstanding Northville's claim that defendants acted in bad faith in causing their supplier to delay the bulk of its oil deliveries for January, 1979 until February, 1979, so that they could avoid their obligation to Northville and sell the oil at a much higher market price, subdivision 8 of the February 15, 1979 agreement clearly and unequivocally provided that the February agreement was to be "in lieu of" and would "supersede" any other agreements existing as of that date between the parties. Further damaging to Northville's position is its own interoffice memorandum, dated February 9, 1979, which outlines the discussions between Northville and Fort Neck with regard to the sale of the latter's surplus oil from February to April, 1979. Northville's interoffice memorandum states in relevant part "Subject: FT. NECK TERMINAL DISPUTE SETTLEMENT * * * 4. We agree no other contractual purchase supply arrangements are in effect". ¶ It is well settled that "where the parties have clearly expressed or manifested their intention that a subsequent agreement supersede or substitute for an old agreement, the subsequent agreement extinguishes the old one and the remedy for any breach thereof is to sue on the superseding agreement" (*American Broadcasting-Paramount Theatres v American Mfrs. Ins. Co.,* 48 Misc 2d 397, 403, affd on opn of Geller, J., at Special and Trial Term, 24 AD2d 851, affd 17 NY2d 849, cert den 385 US 931; accord *Metropolitan Steel Inds. v Fidelity & Deposit Co.,* 68 AD2d 935; *Blair & Co. v Otto V.,* 5 AD2d 276, 279). It is clear from the language employed by the parties that the February 15, 1979 agreement constituted a new contract superseding and extinguishing the contract upon which Northville now attempts to hold Fort Neck liable. The language of subdivision 8 of the February 15, 1979 agreement is clear and unequivocal and to adopt the construction of that subdivision urged by Northville would be unreasonable. ¶ Absent evidence of fraud or other wrongful conduct on the part of some other party to the contract, one who assents to a written contract is conclusively presumed to know its contents such that there can be no question of fact as to his understanding of its terms (*Metzger v Aetna Ins. Co.,* 227 NY 411, 416). It is equally well settled that the construction of a plain and

unambiguous contract is a matter for the court to pass upon without recourse to circumstances extrinsic to the agreement (*West, Weir & Bartel v Carter Paint Co.*, 25 NY2d 535, 540). In the absence of attendant ambiguities, there is no reason to look beyond the clear and plain wording of the contract in order to consider what might have been in the mind of one of the contracting parties (*Raleigh Assoc. v Henry*, 302 NY 467, 473, mot for rearg den 302 NY 940; *Bermont Operating Corp. v City of New York*, 95 AD2d 729). As succinctly expressed by the Court of Appeals: "Thus, where a question of intention is determinable by written agreements, the question is one of law, appropriately decided by an appellate court * * * or on a motion for summary judgment. Only where the intent must be determined by disputed evidence or inferences outside the written words of the instrument is a question of fact presented" (*Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.*, 32 NY2d 285, 291). ¶ Inasmuch as the plain and unambiguous language of both the February 15, 1979 agreement and the phrase "up to 150,000 Barrels" contained in the parties' memorandum of their January 10, 1979 agreement presented no question of fact, the matter was improperly ordered to trial. Accordingly, the judgment in favor of Northville must be reversed, Fort Neck's motion for summary judgment granted, and the complaint dismissed as to it. Gibbons, J. P., O'Connor, Weinstein and Niehoff, JJ., concur.