■ CITIGIFTS, INC., et al., Respondents, v SAMUEL J. PECHNIK et al., Appellants, et al., Defendants.—Order of Supreme Court, New York County (Elliott Wilk, J.), entered September 4, 1984, denying the Pechnik defendants' motion to dismiss the complaint or for summary judgment, unanimously reversed on the law, and summary judgment is granted to defendants dismissing the complaint, with costs.

The Pechniks owned and operated a card shop at One Whitehall Street, Manhattan. The business was known as Jelomax Card & Gift Corp. The principal asset of this corporation was its leasehold interest in the premises. The lease specifically prohibited the Pechniks from transferring the

capital stock of Jelomax without the prior consent of the landlord (defendant One Whitehall Company).

In January 1981 plaintiff Simon Goldfarb contracted to purchase the capital stock of Jelomax, subject to the landlord's consent. The typewritten contract fixed consideration at $900,000, included in which was the leasehold valued at $433,000. The financial terms called for payment of $33,750 at the signing of the contract, to be held in escrow; a check for $103,750 at the closing; and the balance plus interest to be paid under a schedule, $165,000 over a 36-month period, and $597,500 over a succeeding 144-month period. However, in a handwritten rider to the contract, Goldfarb agreed to an additional $200,000 cash payment on or before closing. The contract does not indicate the consideration for which this additional $200,000 was promised.

Closing on this contract was delayed, and in May 1981 the Pechniks entered into another contract for the sale of Jelomax, this time to plaintiff Citigifts, the corporate alter ego of Goldfarb. The terms of this second contract were substantially the same as the first, except that the schedule of payments was changed and it included the sentence: "This agreement supersedes any concurrent or previously signed documents." The consideration was now formalized at $1,100,000, with the valuation of the leasehold interest upgraded to $633,000. The terms of payment now called for the $33,750 down payment in escrow at the signing of the contract, a check for $203,750 at closing, and the balance of $862,500 plus interest to be paid in accordance with a schedule over a 185-month period. The contract was signed by the Pechniks and by Goldfarb as president of Citigifts on May 4, 1981.

This action for breach of the original January 1981 contract was commenced by service of an indorsed summons dated April 23, 1981, seeking specific performance and/or damages. Ironically, the summons was served upon the Pechniks on May 7, just three days after the parties had signed what purported to be the superseding contract. The complaint, which followed in June of that year, alleged essentially that the Pechniks interfered with their landlord's necessary approval of this transaction, and in doing so were able fraudulently to induce plaintiffs to pay the additional $200,000 for this approval, "even though the landlord would not receive any portion of this money." The complaint further alleged that the landlord and its managing agents participated in a conspiracy with the Pechniks to defraud plaintiffs and induce a breach of contract. This latter aspect of the complaint was

dismissed for failure to state a cause of action, the court ruling that under the terms of the lease the landlord had the right to withhold consent to such a transaction "for any or no reason."

Simply stated, the contract signed in May constituted a novation of the agreement reached four months earlier. By its terms, the May 4 contract superseded all prior or currently existing agreements between the parties. Such a novation extinguished the old agreement (*Blair & Co. v Otto V.,* 5 AD2d 276), thereby reducing the remedy for breach to a suit on the new agreement (*Northville Indus. Corp. v Fort Neck Oil Terms. Corp.,* 100 AD2d 865, 867). If plaintiffs were truly aggrieved by the alleged breach of the first contract, they gave up their rights by signing the contract which changed the payment schedule and formalized the additional $200,000 payment of which they now complain, fully 11 days after issuing the indorsed summons that would initiate the instant lawsuit.

Traditionally, a novation assumes a previous valid obligation, extinguished by the terms of a valid new contract agreed to by the parties (22 NY Jur 2d, Contracts, § 401). The argument that the prior contract, on which plaintiffs now sue, was invalid as induced by fraud is undermined by plaintiffs having reaffirmed the inclusion of the additional $200,000 in the new contract signed just three days before commencement of this lawsuit. If plaintiffs are searching for the reason why the landlord withheld its discretionary consent to the transaction, an answer might very well be found in the fact that plaintiffs commenced this suit, charging the landlord, *inter alia,* with conspiracy to defraud, while the contract was still in its executory stage. In other words, plaintiffs' own actions in initiating this lawsuit against the landlord may well have motivated the lack of consent.

The affidavit of the Pechniks' attorney, annexing such documentary evidence as the two contracts between the parties, *inter alia,* was sufficient to support their motion for summary dismissal of this action (*Leandre v Sharperson,* 96 AD2d 883). Concur—Sullivan, J. P., Carro, Fein, Milonas and Ellerin, JJ.