William WIGTON, William Weil and
Joel Miller, Plaintiffs,

v.

Louis P. ROSENTHALL, Defendant.

No. 89 Civ. 0728 (RPP).

United States District Court,
S.D. New York.

Oct. 10, 1990.

Gellis & Melinger by Jan Ira Gellis, New
York City, for plaintiffs.

Louis P. Rosenthall, Westerly, R.I., pro
se.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District
Judge.

Plaintiffs move for summary judgment
pursuant to Fed.R.Civ.P. 12(c) and 56 dis-
missing defendant's counterclaims, and for
summary judgment on the third count of
plaintiffs' amended complaint. The follow-
ing facts are undisputed.

## BACKGROUND

Defendant Louis P. Rosenthall, an attor-
ney admitted to practice law in New Jer-
sey, New York and Rhode Island, is a
resident of Rhode Island. In December
1987 Rosenthall learned that forty acres of
undeveloped land in Westerly, Rhode Is-
land, known as the Conti property, was for
sale. Rosenthall contacted the Conti's bro-
ker in order to determine the seller's terms
of offering. He then proceeded to look for
partners to make the necessary investment
and was put in touch with plaintiffs in
January 1988. Rosenthall stated to plain-
tiffs that the property could be purchased
for $100,000 down payment with the bal-

ance of the $1.9 million purchase price to be financed. A corporation, in which Rosenthall and the three plaintiffs would each receive a 25% stock interest, was to be formed to hold the property. The down payment of $100,000 was to be furnished by the three plaintiffs as consideration for plaintiffs' stock interest. These terms were incorporated in a letter of January 13, 1988 from Rosenthall to Miller and Wigton. On January 13, 1988, plaintiffs wired $100,-000 to Rosenthall's account at the Washington Trust Company in Rhode Island.

Thereafter, on January 26, 1990 Rosenthall signed a proposed contract naming plaintiffs and himself as the purchasers of the property and gave $100,000 to the seller's broker as a down payment pursuant to the contract terms. This contract was never executed by the Contis. Instead, negotiations resulted in a new contract between Rosenthall and the Contis on April 9, 1988 to purchase the property for $1.5 million. This contract of sale was not subject to obtaining financing and required a down payment of $50,000. The broker refunded $50,000 of the $100,000 to Rosenthall to effectuate this result. Under the contract, Rosenthall waived all rights to percolation tests and water table elevation determinations, and obtained rights to conduct such tests on the property which contained wetlands prior to closing. On April 10, 1988 an engineer hired by Rosenthall initiated these tests.

Rosenthall then contacted Wigton and set up a meeting which took place with Wigton and Miller at Wigton's office in New York City on April 15, 1988. At that meeting Wigton and Miller indicated approval of Rosenthall's negotiations. A second meeting, however, was held on April 20, 1988 at the Yale Club in New York City attended by Wigton, Miller and Rosenthall. At this meeting Miller and Wigton refused to go along with the arrangement, taking the position that the April 9, 1988 contract contained changed terms of which they did not approve. Accordingly, it was agreed by those present that Rosenthall would purchase the property in his own name and for his own benefit.[1]

Thereafter, about April 26, 1988 plaintiffs visited the property, discussed its value with a real estate broker, and considered the possibility of purchasing it but there is no evidence they took further steps in that direction.

On May 16, 1988 plaintiffs' counsel placed a call to Mr. Rosenthall to demand the return of plaintiffs' $100,000, and states he reached an agreement with Rosenthall for its return upon plaintiffs signing releases. Rosenthall denies this conversation. On May 20, 1988, plaintiffs' counsel wrote Rosenthall a letter on the same subject which provoked an angry response from Rosenthall.

On June 7, 1988 Rosenthall obtained a mortgage loan commitment of $2,120,000 from the Omni Bank of Connecticut, Inc. to be secured by the Conti property and Rosenthall's residence, and subject to certain conditions being fulfilled. Rosenthall accepted the mortgage commitment and paid Omni $21,200 as a mortgage commitment fee. One of the conditions of the mortgage commitment of Omni Bank was MAI appraisal of the Conti property, in all respects satisfactory to the Lender, showing a value no less than $4.7 million.

Thereafter, in June 1988 plaintiffs' attorneys utilized Rhode Island counsel to initiate a suit in Rhode Island to prevent Rosenthall from transferring to third parties the premises to be acquired unless the $100,000 they had furnished was returned to them. Plaintiffs obtained a temporary restraining order which prohibited any such transfer until July 1, 1988 and required plaintiffs to post a commitment from a surety for $1.5 million. Plaintiffs were also restrained from interfering with Rosenthall's acquisition of the Conti property.

Plaintiffs commenced this action in early 1989. The complaint alleges six counts. Each of the first five counts seeks to recover the $100,000 advance made in January and $250,000 in punitive damages. The

---

**1.** Rosenthall contends that he was to pay back the $100,000 provided he closed on the property.

Plaintiffs contend that Rosenthall's obligation to repay was not contingent on closing.

sixth count charges defendant with conflict of interest and demands $1,000,000 in compensatory damages and $1,000,00 punitive damages.

Defendant denies plaintiffs' charges and, in addition to stating defenses, makes 3 counterclaims. The first counterclaim seeks $2 million in damages for plaintiffs' repudiation of the January 13, 1988 agreement. The second counterclaim seeks $9 million for breach of the April 20, 1988 agreement caused allegedly by the filing of the legal proceedings in Rhode Island. The third counterclaim seeks $9 million in damages and $20 million in punitive damages for plaintiffs tortiously interfering with defendant's proposed purchase of the Conti property, in essence by filing the legal proceedings in Rhode Island.

The Court grants plaintiffs' motion for summary judgment dismissing the three counterclaims, but denies that motion with respect to plaintiffs' third cause of action.

## DISCUSSION

### 1. The First Counterclaim

■ No action can lie for breach of the January 13, 1988 agreement because Rosenthall has acknowledged by sworn affidavit in the Rhode Island proceeding that plaintiffs "at [the April 20, 1988] meeting ... insisted on the return of the $100,000. I agreed that once the deal had closed, I would return the $100,00 to them." Gellis Aff., Exh. E. ¶ 9; Rosenthall Aff. Rosenthall does not in any way disavow or contradict his statements in that affidavit in this proceeding.

■ A superseding agreement creates new contractual obligations between the parties and supplants any prior agreement. In this case, the April 20, 1988 agreement constituted a novation which extinguished the January 13, 1988 agreement. The parties' only remedy for breach is an action based on the new agreement. *See Citigifts, Inc., v. Pechnik*, 112 A.D.2d 832, 492 N.Y.S.2d 752 (App.Div.1985), *aff'd*, 67 N.Y.2d 774, 500 N.Y.S.2d 643, 491 N.E.2d 1100 (1986); *Salo Landscape & Constr. Co. v. Liberty Elec. Co.*, 119 R.I. 269, 376 A.2d 1379 (1977). Accordingly, defendant's first counterclaim fails as a matter of law.

### 2. The Second Counterclaim

■ The second counterclaim is dismissed because there are no genuine issues of material fact as to plaintiffs' alleged breach of the April 20, 1988 agreement. The terms of the agreement required plaintiffs merely to wait for the closing. Summary judgment is appropriate where the parties' obligations under the contract are clear and unambiguous and where there are no material disputes on the facts. *See Tokio Marine & Fire Ins. Co. v. McDonnell Douglas Corp.*, 617 F.2d 936, 940 (2d Cir.1980). Defendant has raised no issue of fact nor presented any evidence made on personal knowledge, as required by Fed.R. Civ.P. 56(e), indicating that plaintiffs' pursuit of the Rhode Island litigation interfered with the Omni Bank closing on the commitment letter.

### 3. The Third Counterclaim

■ The third counterclaim is dismissed for similar reasons. Defendant presents no proof in rebuttal of plaintiffs' proof, consisting of the deposition testimony of Omni Bank loan officer Joseph Perrotta, (1) that the mortgage loan commitment was aborted because of the failure of the MAI appraisal of the property to come close to the requirement of $4.7 million and (2) that the Omni Bank was completely unaware of the Rhode Island litigation. Gellis Aff., Exh. M. Indeed, there is no showing that litigation was pending against the property. By its terms the action only named Rosenthall and the restraining order issued only restrained Rosenthall and the plaintiffs. There is no showing that a lis pendens was filed against the Conti property. Accordingly, defendant has not shown that, but for plaintiffs' conduct, he would have fulfilled his obligations to purchase the Conti property. *Resnick v. Resnick*, 722 F.Supp. 27, 38 (S.D.N.Y.1989).

### 3. Count Three of the Amended Complaint

■ Lastly, plaintiffs seek summary judgment on their third cause of action

which sounds in conversion. This motion is denied. Issues of fact exist relating to the terms of the agreement reached between the parties on April 20, 1990, including what the obligation of defendant was if he were unable to close the Conti deal. Plaintiffs knew the contract Rosenthall had entered into was not contingent on obtaining financing and that he had expended money for percolation tests and would have mortgage commitment fees, as well as legal and related expenses. There is no indication on this record as to how those expenses were to be treated in the event there was no closing. These issues of fact preclude summary judgment on plaintiffs' claim alleging conversion.

The gist of this opinion was stated at oral argument on October 5, 1990. Parties are to appear ready for trial on October 15, 1990 at 9:30 a.m.

IT IS SO ORDERED.