**David B. KREISS and Gregory M. Shelton, Plaintiffs,**

v.

**McCOWN DE LEEUW & CO. and Outsourcing Solutions, Inc., Defendants.**

No. 97 Civ. 9448 (MJL)(RJW).

United States District Court, S.D. New York.

March 4, 1999.

White & Case LLP, New York City (Glenn M. Kurtz, Daniel P. Goldberg, of counsel), for defendants.

Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, New York City (Richard

M. Zaroff, Mitchell R. Kulick, Denise Rubin Glatter, of counsel), for plaintiffs.

## OPINION

WARD, District Judge.

Defendants McCown DeLeeuw & Co. ("MDC") and Outsourcing Solutions, Inc. ("OSI") (collectively, "Defendants") move to dismiss this diversity action pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons stated below, Defendants' motion is granted in part and denied in part.

## BACKGROUND [2]

For many years plaintiffs David Kreiss ("Kreiss") and Gregory Shelton ("Shelton") (collectively, "Plaintiffs") worked in the debt management and collection industry. Together they devised a strategy to combine, in a single organization, companies with debt-portfolio purchasing capabilities and companies with contingent-fee collection capabilities. They developed a business plan (the "Business Plan") to obtain funding to acquire targeted companies in the industry. In early 1995, Plaintiffs presented the Business Plan to MDC, a private venture banking firm, as well as to other venture capital companies. At a meeting on March 30, 1995, the principals of MDC presented Plaintiffs with a letter agreement appending a document entitled "Project Recover Equity Investment Term Sheet" (letter and term sheet collectively, the "Term Sheet"). See Am.Compl., Ex. A. The Term Sheet sets forth the major terms of the proposed business venture and Plaintiffs' participation therein.

Among other things, the Term Sheet provides for the formation of a company (which subsequently became OSI) and for MDC and Plaintiffs to contribute a certain amount of equity. The Term Sheet also outlines Kreiss' and Shelton's respective positions and duties as OSI's President/CEO, and Executive Vice President. With regard to compensation, the Term Sheet states, in part:

> [t]he Company will put in place an option program whereby Mr. Kriess will be eligible to receive options to purchase common equity of the Company equal to 2.5% of the Company.... In the Board's sole discretion, Mr. Kreiss may also be entitled to receive options for an additional 0.5% – 1.0% of the common equity of the Company ... if certain "super-performance" targets are met....

*Id.* at 2–3. Additionally, the Term Sheet states that "[a]t the time of the initial Acquisition, Mr. Kreiss and Mr. Shelton will be entitled to receive 5.0% and 1.5%, respectively, of the common equity of the Company...." *Id.* at 3.

Plaintiffs and a representative of MDC signed the Term Sheet at the March 30, 1995 meeting. Thereafter, Plaintiffs signed two agreements: the Amended and Restated Stockholders Agreement (the "Stockholders Agreement"), and the Stock Option Award Agreement (the "Options Agreement"). Affidavit of Glenn Kurtz, dated April 30, 1998 ("Kurtz Aff."), Exs. 4, 5 and 6. The Stockholders Agreement sets forth the stockholders' rights in connection with ownership of OSI common stock, including transfer, sale and registration of the stock. Section 2.5 of the Stockholders Agreement provides, among other things, for OSI's right to repurchase any shares or vested stock options held by a management stockholder upon termination of employment. Kurtz Aff.Ex. 4 § 2.5. In addition, Section 2.5 contains two formulas for calculating the repurchase price of the stock options in the event a management stockholder resigns. Which formula applies depends on whether the management stockholder resigns for "good reason," as defined in the Section. *Id.*

---

**1.** Although this action remains on the docket of the late Judge Mary Johnson Lowe pending its reassignment, the instant motion is being decided by Judge Robert J. Ward.

**2.** Except where noted, the facts in this section are taken from the Amended Complaint and assumed to be true for the purpose of the motion to dismiss.

The Options Agreement grants each Plaintiff options to purchase $0.01 par value common stock of OSI at a per share price of $12.50 pursuant to the company's stock option plan, and sets forth the applicable terms and conditions. Kurtz Aff.Ex. 5, ¶ 1. Paragraph 2(d)(iii)(B) provides, among other things, that if the optionee resigns for "good reason," the optionee may exercise his or her vested stock options, subject to OSI's right of repurchase, as provided in the Stockholders Agreement. Significantly, the Options Agreement grants Plaintiffs fewer stock options than promised in the Term Sheet.

After the March 30, 1995 meeting, at which the Term Sheet was signed, Plaintiffs organized OSI. Kreiss contributed $100,000 in equity to the company and Shelton contributed $50,000 in equity, in exchange for 8,000 and 4,000 shares of common stock respectively. MDC contributed $15,000,000 to the creation of OSI. In the months following, Plaintiffs successfully implemented the Business Plan as contemplated in the Term Sheet, garnering substantial earnings for OSI. Through Plaintiffs' expertise and business contacts, OSI acquired four existing companies in the debt management and collection industry. Throughout the course of the acquisitions, Defendants assured Plaintiffs that they would receive substantial equity stakes in OSI, equaling tens of millions of dollars.

OSI's fourth acquisition, of a company named Payco, took place in January 1996, following a successful $100,000,000 debt offering. Plaintiffs were instrumental in identifying Payco as potential target company and in the negotiations that led to its acquisition. Despite Plaintiffs' contribution, Defendants ultimately "excluded" Kreiss from the Payco deal. Defendants told Plaintiffs that upon acquisition of Payco, a new CEO would be hired for OSI and that Plaintiffs would "no longer be in positions to control the operations of OSI." Am.Compl. ¶ 25. Subsequently, Defendants significantly reduced Plaintiffs' authority and responsibilities. Defendants never conveyed to Plaintiffs the equity as promised in the Term Sheet.

On October 22, 1996, Plaintiffs resigned their positions as officers, directors and employees of OSI. Just prior to their resignations, Kreiss and Shelton tendered cash payment and written notice to OSI that they were exercising their options to acquire OSI common stock under the Options Agreement. Defendants rejected Plaintiffs' exercise of their stock options.

Plaintiffs commenced this action on December 23, 1997. The amended complaint ("Amended Complaint") asserts claims for wrongful rejection of Kreiss' and Shelton's exercise of stock options (Claims I and II—breach of contract); breach of the Term Sheet (Claim III—breach of contract); and quantum meruit or unjust enrichment, based on Plaintiffs' performance of their obligations under the Term Sheet (Claim IV—quasi-contract). By way of relief Plaintiffs seek specific performance to enforce their stock options under the Options Agreement, monetary damages and reimbursement of the costs of litigation, pursuant to Section 5.7(d) of the Stockholders Agreement. On March 3, 1998, Defendants interposed an answer and counterclaim for reimbursement of litigation costs under Section 5.7(d) of the Stockholders Agreement. Defendants now move to dismiss the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) and for summary judgment for litigation costs, pursuant to Fed.R.Civ.P. 56.

## DISCUSSION

### I. Motion to Dismiss Standard

A court may only grant a motion to dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 894–95 (2d Cir.1976). The Court must draw all reasonable infer-

ences in favor of the plaintiff and accept all material facts alleged in the complaint as true. *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976); *Cohen v. Koenig*, 25 F.3d 1168, 1171–72 (2d Cir. 1994).[3]

■ In a contract case "where a question of intention is determinable by written agreements, the question is one of the law, appropriately decided ... on a motion for summary judgment ...," and by parity of reasoning, a motion to dismiss. *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir.1989) (internal cites omitted). *See also State Bank of India v. Walter E. Heller & Co.*, 655 F.Supp. 326, 326–27 (S.D.N.Y.1987) (where a contract is clear, issues of interpretation are questions of law properly disposed of through a motion for judgment on the pleadings).

## II. *Breach of Contract Claims*

### A. *Wrongful Rejection of Exercise of Stock Options (Claims I and II)*[4]

■ Plaintiffs claim that Defendants wrongfully rejected each of their attempts to exercise the stock options granted them in the Options Agreement. These claims sound in contract law. To prevail in an action for breach of contract under New York law, a plaintiff must satisfy four elements: 1) the making of a contract, 2) plaintiff's performance of the contract, 3) defendant's breach of the contract and 4) damages suffered by the plaintiff. *See Coastal Aviation, Inc. v. Commander Aircraft Co.*, 937 F.Supp. 1051, 1060 (S.D.N.Y. 1996), *aff'd* 108 F.3d 1369 (2d Cir.1997).

■ Defendants do not dispute the existence of the Options Agreement or Plaintiffs' performance under it, but instead, whether a breach in fact occurred. They assert that Plaintiffs' attempt to exercise their stock options was a nullity because Defendants had already repurchased the stock options, pursuant to Section 2.5 of the Stockholders Agreement. In response, Plaintiffs contend that the repurchase was ineffective because Defendants failed to comply with the repurchase provisions of the Stockholders Agreement. Inquiry here into whether Defendants effectively repurchased Plaintiffs' stock options in accordance with the Stockholders Agreement is unnecessary, as the issue is one of fact not properly resolved on a motion to dismiss. The Court need only ascertain that Plaintiffs have pled the required elements of a breach of contract claim, which they have done. The Amend-

---

**3.** Both parties attached to their motion papers materials extrinsic to the Amended Complaint. When a party introduces matters extraneous to the pleadings, the court must convert the motion to dismiss to a motion for summary judgment or exclude certain matters from consideration. *See Fonte v. Bd. of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir.1988); Fed. R.Civ.P. 12(b). The Court declines to convert the motion to one for summary judgment and excludes from consideration Exhibit 7 of the Kurtz Affidavit; Exhibits C, D, E, F and G of the Affidavit of David Kreiss, dated May 28, 1998 ("Kreiss Affidavit"); and the entirety of the Declaration of Daniel Pijut. The Court also excludes factual allegations in the Kreiss Affidavit to the extent that they substantively enlarge upon the facts in Amended Complaint. However, the Court will consider the Term Sheet on the motion to dismiss because it is attached to the Amended Complaint. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949

F.2d 42, 47–48 (2d Cir.1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."); Fed. R.Civ.P. 10(c). In addition, the Court will consider the Stockholders Agreement and the Options Agreement (Kurtz Aff., Exs. 4, 5 and 6) because Plaintiffs have actual notice of these agreements and rely upon them in the Amended Complaint. Further, the agreements are integral to Plaintiffs' claims. *See id.* at 47–48. ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.")

**4.** Claims I and II are identical and asserted on behalf of Kreiss and Shelton individually.

ed Complaint identifies a contract (the Options Agreement), alleges that Plaintiffs performed, that Defendants breached in rejecting Plaintiffs' exercise of the stock options, and that Plaintiffs were damaged. Since Plaintiffs have adequately pled the elements of a contract claim, the motion to dismiss is denied as to Claims I and II.[5]

### B. Breach of the Term Sheet (Claim III)

Plaintiffs allege that Defendants breached the Term Sheet by "fail[ing] to deliver to Plaintiffs their common equity of defendant OSI and the options to purchase additional common equity of defendant OSI ... [and by] attempt[ing] from time to time] to renegotiate and change, to Plaintiffs' detriment, provisions of Term Sheet dealing with compensation, employment, duties and options." Am.Compl. ¶¶ 44–45. Defendants move to dismiss this claim on the basis that 1) the Term Sheet is not a binding, enforceable contract, 2) in any event it was superseded by the Stockholders Agreement, and 3) no cause of action exists for "attempting to renegotiate" a contract.[6] Each argument is addressed below.

### 1. Was the Term Sheet a Binding Contract?

 It is a basic principle of contract law that absent the parties' intent to be bound, no contract can be formed. *See R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d. Cir.1984); *Winston v.*

*Mediafare Entertainment Corp.*, 777 F.2d 78, 80 (2d Cir.1985); *Scheck v. Francis*, 26 N.Y.2d 466, 311 N.Y.S.2d 841, 843, 260 N.E.2d 493 (1970). The law recognizes contracting parties' freedom to determine the exact point at which an agreement becomes binding. Therefore, "in any given case it is the intent of the parties that will determine the time of contract formation." *Winston*, 777 F.2d at 80. Under New York law, a preliminary or informal agreement can be binding even though the parties plan to memorialize their contract in a formal document. *See R.G. Group*, 751 F.2d at 74; *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir.1989). The Court of Appeals has cautioned, however, that courts should not frustrate a party's "forthright, reasonable signals" of his or her intent. *R.G. Group*, 751 F.2d at 75. "If either party communicates an intent not to be bound until [achieving] a fully executed document, no amount of negotiation or oral agreement to specific terms will result in the formation of a binding contract." *Winston*, 777 F.2d at 80 (citing *R.G. Group*, 751 F.2d at 74).

 In determining whether parties intend a preliminary agreement to be binding, courts look primarily to its language. *Arcadian*, 884 F.2d at 72 (citing *Teachers Ins. and Annuity Ass'n v. Tribune Co.*, 670 F.Supp. 491, 499 (S.D.N.Y.1987)); *see also R.G. Group*, 751 F.2d at 75 (considerable weight given to explicit statement that party would not be bound in absence

---

**5.** Defendants contend that Plaintiffs should be required to amend the complaint if they wish to introduce factual allegations in the Kreiss Affidavit regarding the validity of Defendants' repurchase of the stock options. Since the Amended Complaint on its face states a claim for breach of the Options Agreement, Plaintiffs need not amend it. "A plaintiff need not set out in detail the facts upon which his claim is based, so long as he states his claim in a manner to give defendant fair notice of what his claim is and the grounds upon which it rests." *Magee v. Nassau County Medical Center*, 27 F.Supp.2d 154, 161 (E.D.N.Y.1998) (citing *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Thus, "where

a bona fide complaint is filed that charges every element necessary to recover, summary dismissal of a civil case for failure to set out evidential facts can seldom be justified." *United States v. Employing Plasterers Ass'n of Chicago*, 347 U.S. 186, 189, 74 S.Ct. 452, 98 L.Ed. 618 (1954).

**6.** Defendants also argue that even if the Term Sheet could be considered a binding contract, it expressly permits the repurchase of Plaintiffs' stock options. This argument overlooks that in Claim III, Plaintiffs seek the additional options promised in the Term Sheet and not those conveyed in the Options Agreement.

of written agreement). Courts also consider whether open terms exist, whether there has been partial performance, and whether parties engaging in similar transactions customarily put such agreements in final form. *Arcadian*, 884 F.2d at 72. In *Arcadian*, the Second Circuit found the language dispositive in holding that a preliminary agreement which anticipates execution of a final contract, and which lacks an express statement that it is to be a binding contract, is unenforceable even as a contract to negotiate. *Id.* at 72–73. The plaintiff in *Arcadian* sought to enforce a preliminary memorandum signed by the parties that outlined most of the terms of the sale of the defendant's phosphate fertilizer business to the plaintiff. The language of the memorandum explicitly referenced the possibility that the negotiations might fail and that a binding sales agreement would be completed at some future date. *Id.* Based on such language, the Court held that, as a matter of law, the parties did not intend for the memorandum to be binding. *Id.*

▉ As in *Arcadian*, the Court need look no further than the language of the Term Sheet, which expressly reserves the parties' right not to be bound by the document. The Term Sheet states:

> It is understood that this letter shall not be deemed to be self-executing, and that the parties' respective legal obligations (except for the agreements in the immediately preceding paragraphs) shall arise solely from definitive documents to be entered into.[7]

Am.Compl., Ex. A, letter at 2. This language goes further than that of the memorandum in *Arcadian*, and demonstrates the parties' clear intent to be bound only by forthcoming final agreements. *See In re Mizlou Communications Co., Inc.*, No. 91 Civ. 6752, 1993 WL 36158 at *5–6 (S.D.N.Y. Feb.10, 1993) (language in term sheet stating "the terms hereof shall have no force and effect until definitive docu-

mentation containing such terms is executed" conclusively demonstrated parties' intent not to be bound). Plaintiffs' contention that the substantial performance by both sides demonstrates that the parties intended the Term Sheet to be binding is to no avail. In *Arcadian*, the Court acknowledged that there had been considerable partial performance, but nevertheless found the language of the parties' preliminary agreement controlling. 884 F.2d at 73. As the Court observed, "a party that wishes to be bound can very easily protect itself by refusing to accept language that shows an intent not to be bound." *Id.* at 73 (citing *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 262 (2d Cir.1984), *cert. denied*, 469 U.S. 828, 105 S.Ct. 110, 83 L.Ed.2d 54 (1984)).

Plaintiffs cite *I.R.V. Merchandising Corp. v. Jay Ward Productions, Inc.*, 856 F.Supp. 168 (S.D.N.Y.1994), in support of their argument that the language of the Term Sheet should not be outcome determinative. In *I.R.V.*, the court found that partial performance, among other factors, created issues of fact regarding the parties' intent to be bound by a preliminary memorandum, despite language in the memorandum that explicitly contemplated the drafting of a later contract. However, the court failed to find the language of the memorandum conclusive, in part because of the presence in the document of contradictory statements that supported an intent to be bound. In particular, the *I.R.V.* memorandum stated that the parties' agreement was effective as of the date the memorandum was signed. *Id.* at 173. The court found such statement suggestive of the parties' intent to create a contractual relationship upon the signing of the memorandum, rather than upon the execution of a future document. *Id.* In contrast, no such conflicting statements appear in the language of the Term Sheet. Moreover, the Term Sheet's expression of the parties' intent not to be bound is more

---

7. The "preceding paragraphs" concern Plaintiffs' rights to certain cash compensation and

do not encompass the promises of equity and stock options that Plaintiffs seek to enforce.

emphatic than that in the *I.R.V.* memorandum. The Term Sheet does not merely contemplate subsequent execution of formal agreements, but states that the parties' legal obligations shall arise *solely* from those documents. This unambiguous expression of the parties' intent not to be bound establishes that, as a matter of law, the Term Sheet was not binding. *See Mizlou*, 1993 WL 36158, at \*6.

### 2. *Even if the Term Sheet was a Contract, was it Superseded?*

■ Defendants claim that even if the Term Sheet could be deemed a valid contract, its promises of equity and stock options were superseded by the later executed Stockholders Agreement, and are therefore unenforceable. The Stockholders Agreement contains a merger and integration clause which states: "This Agreement contains the entire agreement between the parties hereto *with respect to the subject matter hereof* and supersedes all prior arrangements or understandings ... with respect thereto." Kurtz Aff., Ex. 4 § 5.1 (Emphasis added). New York law gives full effect to integration and merger clauses. *See Health–Chem Corp. v. Baker*, 915 F.2d 805, 811 (2d Cir.1990) ("When the parties to a contract enter into a new agreement that expressly supersedes the previous agreement, the previous agreement is extinguished, thereby reducing the remedy for breach to a suit on the new agreement.") (citing *Citigifts, Inc. v. Pechnik*, 112 A.D.2d 832, 492 N.Y.S.2d 752 (1st Dep't 1985), *aff'd mem.*, 67 N.Y.2d 774, 500 N.Y.S.2d 643, 491 N.E.2d 1100 (1986)). Even in the absence of an integration and merger clause, "under New York law, a subsequent contract regarding the same subject matter supersedes the prior contract." *Independent Energy Corp. v. Trigen Energy Corp.*, 944 F.Supp. 1184, 1195–96 (S.D.N.Y.1996) (citing *Barnum v. Millbrook Care Ltd. Partnership*, 850 F.Supp. 1227, 1236 (S.D.N.Y.), *aff'd*, 43 F.3d 1458

(2d Cir.1994)); *see also College Auxiliary Servs. of State Univ. College at Plattsburgh, Inc. v. Slater Corp.*, 90 A.D.2d 893, 456 N.Y.S.2d 512, 513 (3d Dep't 1982) (later written agreement merges and integrates prior agreements and negotiations).

By its terms, and under New York law, the Stockholders Agreement only supersedes prior agreements concerning the same subject matter. As previously discussed, the Stockholders Agreement governs the stockholders' rights in connection with ownership of OSI stock, including rights of transfer, sale and registration. On the subject of stock options, Section 2.5 of the Stockholders Agreement provides that OSI has the right to repurchase management stockholders' stock options upon termination of their employment. However, the agreement is silent with respect to how much equity and stock options Plaintiffs were to receive. Because the subject matter of the Stockholders Agreement does not cover the specific award to Plaintiffs of equity and stock options, the agreement does not supersede the Term Sheet in that regard.[8]

### 3. *Defendants' Attempts to Renegotiate and Change the Term Sheet*

■ The Court has found no precedent (and Plaintiffs have not provided any) to support a claim for breach of contract on the basis that the Defendants attempted to renegotiate or change the terms of the contract. Conceivably, in the extreme, such actions could constitute a breach of the duty of good faith and fair dealing implied in every contract. However, Plaintiffs fail to allege such a claim separately, and in any event, no implied duty of good faith and fair dealing may attach to an unenforceable contract such as the Term Sheet. *See, e.g., Health and Community Living, Inc. v. Goldis Fin. Group, Inc.*, No. 96 Civ. 0459, 1998 WL 117928, at

---

**8.** In contrast, the Options Agreement clearly supersedes the Term Sheet on the subject of stock options, as both agreements concern the

specific amount of stock options awarded to Plaintiffs.

*5 (E.D.N.Y. March 13, 1998) (dismissing claim of breach of covenant of good faith and fair dealing premised on unenforceable contract).

### III. Quasi–Contract Claim (Claim IV)

As an alternative to the claim for breach of the Term Sheet, Plaintiffs seek to recover the compensation promised in the Term Sheet on the theory of unjust enrichment or quantum meruit. Specifically, they seek the "reasonable value of the services and performance rendered ... including, among other things, the value of the equity position in OSI to which Plaintiffs are entitled." Am.Compl. ¶ 51. Defendants assert that the unjust enrichment claim is barred because the Options Agreement and Stockholders Agreement are express contracts governing the subject of Plaintiffs' entitlement to OSI equity and stock options.

▮▮▮▮ Quantum meruit is a quasi-contractual doctrine that applies in the absence of an express contract and is imposed in order to prevent a party's unjust enrichment. *Clark–Fitzpatrick, Inc. v. Long Island Rail Road Co.,* 70 N.Y.2d 382, 521 N.Y.S.2d 653, 656, 516 N.E.2d 190 (1987). "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Id.;* see also *City of Yonkers v. Otis Elevator Co.,* 844 F.2d 42, 48 (2d Cir.1988) (Quasi-contractual "relief is unavailable where an express contract covers the subject matter"). As discussed in the preceding section, the subject matter of the Stockholders Agreement is limited to the rights concerning ownership of OSI stock and does not cover the specific subject of whether or in what amount Plaintiffs were to receive OSI stock options and equity. Consequently, the existence of the Stockholders Agreement does not bar Plaintiffs' unjust enrichment claim. As also discussed, the Options Agreement expressly addresses the award of stock options to Plaintiffs. Its existence thus precludes Plaintiffs' quasi-contract claim insofar as Plaintiffs seek to recover the additional amount of stock options promised in the Term Sheet, but not provided in the Options Agreement.

▮▮▮▮ Plaintiffs, however, may seek recovery of other compensation promised in the Term Sheet such as equity, since no express contract exists on the subject. To recover in quantum meruit for such compensation, Plaintiffs must establish "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Longo v. Shore & Reich, Ltd.,* 25 F.3d 94, 98 (2d Cir.1994) (citations and internal quotation marks omitted). The Amended Complaint alleges that Plaintiffs organized and operated OSI in good faith and in accordance with the Term Sheet and Business Plan; that Plaintiffs expected to be compensated; that Defendants accepted and retained the benefits of Plaintiffs' performance and services without adequately or fairly compensating them; and that the reasonable value of Plaintiffs' services is as set forth in the Term Sheet, and includes their equity position in OSI. Since Plaintiffs have adequately pled the required elements of a quantum meruit claim, Defendants' motion to dismiss Claim IV is denied.

### IV. Litigation Costs

Both parties claim entitlement to reimbursement of legal costs under the Stockholders Agreement. Section 5.7(d) of the Stockholders Agreement states:

> The parties hereto agree that the prevailing party ... in any action, suit, ... or other proceeding arising out of or with respect to this Agreement or the transactions contemplated thereby shall be entitled to reimbursement of all costs of litigation, ... from the non-prevailing party. For purposes of this Section ... each of the "prevailing party" and the

"non-prevailing party" ... shall be the party designated as such by the court, ... such determination to be made as part of the judgment rendered hereby.

Kurtz Aff., Ex. 4. The Court reserves determination of the "prevailing" and "non-prevailing party" until final judgment in this action. Accordingly, Defendants' motion for summary judgment for litigation costs is denied.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is denied as to Claims I, II and IV, and granted with respect to Claim III. Defendants' motion for summary judgment for litigation costs is denied. The parties shall stipulate to a discovery schedule and advise the Court by March 30, 1999.

It is So Ordered.