**GEORGE A. KOTEEN ASSOCIATES, INC., Plaintiff-Appellant,**

v.

**FULTON INDUSTRIES, INC., Defendant-Appellee.**

No. 85, Docket 34782.

United States Court of Appeals, Second Circuit.

Argued Oct. 8, 1970.

Decided Feb. 23, 1971.

John M. Foley, New York City (Foley, Hickey, Gilbert & Currie, New York City), for plaintiff-appellant.

Peter G. Corbett, New York City (Regan, Goldfarb, Powell & Quinn, New York City, John J. Galgay, New York City, of counsel), for defendant-appellee.

Before MOORE, SMITH and ANDERSON, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This is an appeal from a judgment in favor of defendant-appellee after a trial in the United States District Court for the Southern District of New York before Judge Levet sitting without jury on a contract claim. Plaintiff-appellant, George A. Koteen Associates, Inc., is a utility rate analyst whose business is to review and audit its clients' monthly utility bills to determine whether cost reductions on utility services are possible. On October 25, 1960 the parties entered into a contract whereby Koteen was employed as Fulton's "utility rate consultant" for a period of three years. Koteen obligated itself to analyze the "rates and contracts" under which Fulton purchased its utility services and to advise Fulton how it might "take full advantage of all provisions, clauses, and special riders in force." If Fulton were to adopt any recommendations made by Koteen, it was to pay Koteen 50% of all savings secured through its efforts for a period of 48 months from the date each reduction first appeared on Fulton's monthly bill.

On December 12, 1960 Fulton's comptroller wrote to Koteen asking for its advice on how it should answer a questionnaire from its gas supplier, Atlanta Gas Light Company, as to what its continued future need for "firm gas" would be.[1] Koteen then initiated a series of correspondence and technical studies after which it recommended that Fulton reduce or eliminate its purchases of "firm gas" and switch to "interruptible gas." Koteen calculated that this would result in substantial cost savings without interruption of the plant's operations. After some delay, Fulton did reduce its firm gas contract with its supplier by 50%.

Appellee, however, refused to pay appellant the commission called for by the contract contending that the agreement provided for such payments only for savings which resulted from "rate reductions" (i. e. reductions in the *per unit* costs charged by utility suppliers), but not for changes in methods of operations. The relevant section of the contract provided:

> RATES AND CONTRACTS: Make an analysis of our rates and contracts under which our electric, gas, water, and steam services are being purchased to determine if we are receiving the most favorable rate schedules available. Also advise how we may take full advantage of all provisions, clauses, and special riders in force
>
> *     *     *     *     *     *
>
> We do agree to pay you 50% of all rate reductions which are secured through your efforts, for a period of 48 months from the date each reduction actually appears on our bills.
>
> *     *     *     *     *     *
>
> We will pay you within thirty days after bills are paid on which savings are effected.

In order for Koteen to recover under the contract, according to the district court, it would be necessary for it to effect a change in the per unit price of gas charged by the utility. Yet if this were what the parties had contemplated, Koteen's only functions would have been to lobby before the state Public Utility Commission which regulates per unit utility rates, and perhaps to correct billing errors.

In the light of the history of the dealings between the parties as presented in the testimony at trial it would appear logical to interpret the term "rate reduction" as meaning the reduction in the total amount paid by Fulton to the utilities for the services which it required. It should be remembered that Fulton initially sought Koteen's advice concerning its "firm gas" commitment. This would certainly indicate that Fulton thought that this was a subject encompassed under the contract. During the entire time that the subject was under discussion the parties were concerned with whether interruptible gas could be used, whether interruptible service had been improved, and whether meaningful concessions could be negotiated with the utility company to equate interruptible gas as a practical matter with firm gas. The dealings between the parties on this question went on over a considerable period of time and involved both detailed studies made by Koteen for Fulton and at least two trips to Atlanta by Koteen and some of his employees. At no time did Fulton indicate in any way that it considered these discussions on the feasibility of switching from firm gas to interruptible gas were not within the terms of the contract.

Appellees contend that even if this court finds that the terms of the contract are ambiguous on this question, the general principle that doubts as to the meaning of contract terms should be resolved against the party who prepared the contract should act to absolve appel-

1. Gas contracted for under a utility's "firm gas" rate schedule must be made available to the customer without interruption. Gas purchased under an interruptible rate schedule may be curtailed by the utility during peak periods of consumption. Firm gas is, of course, more costly than interruptible gas.

lee of any liability. We are, however, of the view that the interpretation suggested above that the contract referred to *all* cost savings to Fulton as a result of Koteen's advice on the use of utilities is a much more realistic way to interpret the intention of the parties, and in this regard there is little, if any, ambiguity which would call this rule of interpretation into play in view of the overall purpose of the contract and the actions of the parties under it. The fact that Fulton continued to consult with Koteen on this matter over an extended period of time would seem to further argue against permitting Fulton now to deny its liability.

■ At trial, the appellee raised a third point, which, because of his decision on the interpretation of the contract language, Judge Levet did not find it necessary to reach. This involved appellee's contention that Koteen had in effect suggested that, based on its experience with other of its clients who purchased services from the Atlanta Gas Light Company, even if Fulton should find it necessary to violate the curtailment agreement if it were to switch to interruptible gas, the utility company had, in other cases, more or less ignored the violations of these terms and not imposed penalty charges. Appellee thus argues that appellant was recommending that it act in a way that would constitute a breach of the proposed revised contract with the utility, and that it is a general principle of contract law that a contract whose implementation involves or induces the breach of another agreement with a third party is void as against public policy and will not be enforced.

This point was not covered to any extent in either party's brief and from the record it is difficult to decide whether Koteen was in fact recommending that Fulton act in this manner. The only documentary reference to this matter was contained in a letter from Koteen to Fulton on November 21, 1961 which stated:

> We trust that when Mr. Elsas discusses this matter with the gas company he will bear in mind our discussions where we pointed out the other companies whom we service, and who had transferred from firm/interruptible to 100% interruptible, and who will not divulge any information regarding their standby equipment or curtailment record. He should bear in mind the bill we presented where a gas customer violated curtailment by over 100% of his firm supply, and the only penalty was a demand charge for one month. This violation occurred during three months of one year. Your demand charge extends for the full year.

In any event, the new contract which was negotiated with the utility apparently contained, either in the contract or as part of an oral understanding between Fulton and the utility, provisions which would permit Fulton to violate curtailment provisions without penalty. Since, therefore, the eventual agreement did not contemplate illegal or tortious conduct by Fulton, it is difficult to see how the equitable principle suggested by Fulton as an independent reason for not enforcing the agreement between Koteen and Fulton would be applicable.

Since the parties have stipulated as to damages in the amount of $13,497.43, the judgment of the district court is reversed and the case remanded with direction that the district court enter a judgment in this amount.