**HEALTH–CHEM CORPORATION, Plaintiff–Appellant,**

v.

**Leon C. BAKER, Defendant–Appellee and Counterclaim Plaintiff–Cross–Appellant,**

v.

**HEALTH–CHEM CORPORATION, Counterclaim Defendant–Appellant,**

and

**Marvin M. Speiser, Additional Defendant on Counterclaim–Cross–Appellee.**

Nos. 1589, 1632, Dockets 90–7338, 90–7372.

United States Court of Appeals, Second Circuit.

Argued May 25, 1990.

Decided Sept. 28, 1990.

---

Leon P. Gold (Mitchell J. Geller, Jonathan M. Landsman, Shea & Gould, New York City, of counsel), for appellant Health–Chem Corp. and cross-appellee Marvin M. Speiser.

Mathew E. Hoffman (Robert J. Schechter, Keck Mahin Cate & Koether, New York City, of counsel), for appellee-cross-appellant Leon C. Baker.

Before VAN GRAAFEILAND, MESKILL and WALKER, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

Health–Chem Corporation appeals from that portion of a summary judgment of the United States District Court for the Southern District of New York (Duffy, J.) which dismissed its complaint against Leon C. Baker and awarded Baker $18,129,008.93 on his counterclaim against Health–Chem. 737 F.Supp. 770 (1990). Baker appeals from that portion of the judgment which dismissed his counterclaim against Marvin M. Speiser. Resourceful counsel have advanced a plethora of reasons why one or the other parts of the district court's judgment should not stand. Finding no merit in any of them, we affirm.

Health–Chem is a Delaware corporation whose stock is traded on the American Stock Exchange. At various times prior to 1987, Baker was a director of Health–Chem, its general counsel, and chairman of its executive committee. At the time of the events at issue, Baker and cross-appellee Speiser were the two largest individual shareholders of Health–Chem, respectively holding approximately 8.5 percent and 12 percent of its stock. In 1986 litigation arose between Baker on the one hand and Speiser and Health–Chem on the other over the election of Speiser as Senior Vice President and the removal of Baker from certain committees of the Board of Directors. On March 29, 1987 Baker, Speiser, and Health–Chem entered into an "Outline of Settlement" in an attempt to resolve their disputes and separate Baker from the company. The Outline provided that the parties would drop all lawsuits pending between them and that Baker would resign from his directorship and sell his Health–Chem stock.

In consideration of Baker's agreement to sell his stock, Health–Chem guaranteed Baker a price of $13.50 per share, which reflected the closing market price on March 27, 1987. Baker owned 1,207,694 shares of Health–Chem, which would bring him $16,303,869 if the stock was sold at $13.50 per share. To guarantee this price, Health–Chem agreed to pay any amount by which the proceeds of the sale of stock fell short of $16,303,869 (the "adjustment amount"). Finally, the Outline provided that it would "be incorporated into a definitive agreement to be negotiated and executed among the parties as soon as possible."

On July 7, 1987 the parties entered into a "Settlement Agreement" that expressly superseded the Outline. The Settlement Agreement incorporated the above-described provisions for the sale of Baker's stock and provided that Health–Chem would have the exclusive right to direct the manner and timing of the sale. Regarding the adjustment amount, the Agreement stated:

> In return for Baker's agreement to allow Health–Chem to manage the sale of the Baker Shares ... Health–Chem hereby agrees that (i) it shall cause the sale of the Baker Shares and shall cause the Gross Proceeds ... to be paid to Baker and (ii) at the expiration of the Sale Period it will pay to Baker the amount, if any, by which $16,303,849 [sic] exceeds the Gross Proceeds (such excess being herein called the "Adjustment Amount").

Section 10.10 of the Agreement provided, however, that

> [u]pon ... determination that any term or other provision [of this Agreement] is invalid, illegal or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement. . . .

The Settlement Agreement gave Health–Chem the period between August 1, 1987 and August 31, 1988 in which to sell Baker's stock, but Health–Chem failed to arrange the sale within the time provided. Health–Chem claims it was prevented from doing so by the October 1987 market crash, when the Dow Jones Industrial Average fell over 500 points. As part of the market debacle, Health–Chem stock, which had been trading at $13.50 a share, fell to approximately $4.50 a share and remained at or below that level. By August 31, 1988, the last day of the sale period, Health–Chem's stock traded at $3.875.

Faced with the prospect of paying Baker an adjustment amount of well over $10 million, Health–Chem asked Baker to renegotiate the Settlement Agreement. When Baker refused to make any substantial changes, Health–Chem brought this action in New York Supreme Court to compel him to renegotiate the Agreement and to enjoin him from forcing Health–Chem to sell his stock or pay him the adjustment amount. Baker removed the case to the Southern District and counter-claimed for the adjustment amount against Health–Chem and Speiser individually. On cross motions for summary judgment, the district court dismissed Health–Chem's complaint and granted Baker summary judgment against Health–Chem alone on his counterclaim for the adjustment amount; the district court dismissed Baker's counterclaim against Speiser.

■ Health–Chem's principal contention on appeal is that, because of the decline in the price of its stock, performance of the Settlement Agreement would violate a restrictive covenant in a 1981 Indenture pursuant to which Health–Chem had issued $20 million in debentures. The Indenture provides that Health–Chem will not "make any distribution on its Capital Stock or to its stockholders ... or purchase, redeem or otherwise acquire or retire for value any Capital Stock" if the cost of so doing exceeds a specified available amount, which is defined as 50 percent of Health–Chem's net earnings after December 31, 1980, plus the net proceeds of certain sales of stock and indebtedness.

Claiming that the adjustment amount due Baker under the Settlement Agreement would constitute an indirect distribution on capital stock in excess of such available amount, Health–Chem asserts that it "cannot comply with the Settlement Agree-

ment without breaching ... the Indenture." Health–Chem contends further that, because performance of the Settlement Agreement would violate the Indenture, section 10.10 of the Settlement Agreement obligates Baker to negotiate a modification of the Agreement. Health–Chem alleges that Baker is "tortiously interfering with the Indenture by failing to renegotiate as required by Section 10.10." The district court correctly rejected these claims.

The district court held that Health–Chem's agreement to pay Baker the "adjustment amount" was not the equivalent of Health–Chem purchasing its own shares or making a distribution with respect to them. The Settlement Agreement contemplates both public and private sale of Baker's stock to third parties. Payment to Baker of an "adjustment amount" based on stock transferred by him to third parties could not by any stretch of logic be treated as a "distribution" to him. Neither could transfer of the stock to third parties be treated as a purchase or redemption by Health–Chem.

■ Assuming for the sake of argument that Health–Chem's payment of the adjustment amount would constitute such a proscribed distribution or redemption, the Settlement Agreement would not be invalidated thereby. Traditionally, one who has knowledge of an existing contract between others and intentionally, knowingly and without reasonable justification induces one of the parties to the contract to breach it to the damage of the other party commits a tortious wrong against that other party. *Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 120, 151 N.Y.S.2d 1, 134 N.E.2d 97 (1956); *Hornstein v. Podwitz*, 254 N.Y. 443, 448, 173 N.E. 674 (1930). However, to be actionable, the interference must be intentional and not incidental to some other lawful purpose. *Alvord & Swift v. Stewart M. Muller Constr. Co.*, 46 N.Y.2d 276, 281, 413 N.Y.S.2d 309, 385 N.E.2d 1238 (1978). Proof of such tortious intent is completely lacking in the instant case. Health–Chem admits that neither it nor Baker intended the Settlement Agree-

ment to interfere with Health–Chem's obligations under the Indenture.

■ Health–Chem's attempt to frame this defense in contract rather than tort is unavailing. Although under some circumstances a contract whose performance involves or induces the breach of another agreement with a third party may be unenforceable on the ground of public policy, *see George A. Koteen Assoc., Inc. v. Fulton Indus., Inc.*, 438 F.2d 625, 627 (2d Cir.1971); *Reiner v. North American Newspaper Alliance*, 259 N.Y. 250, 258–62, 181 N.E. 561 (1932) (Crane, J., concurring in result), that rule has no application here. The Settlement Agreement is not illegal. It violates no laws, rules or regulations, and Health–Chem concedes no wrongdoing on its part. Absent wrongful conduct on the part of Baker that would be at least as substantial as that required for a claim of tortious interference, the Agreement violates no public policy. *See Koteen Assoc., supra*, 438 F.2d at 627.

■ The district court also correctly rejected Health–Chem's attempt to construct a theory of breach of fiduciary duty on the part of Baker. Baker no longer was a director of Health–Chem when the Settlement Agreement was executed, and there is no contention that he took advantage of inside information available to him as a director. The Settlement Agreement was the result of arms-length negotiations and was ratified unanimously by Health–Chem's Board of Directors. Each side was entitled to retain the benefits for which it fairly negotiated. *See* N.Y.Bus.Corp.L. § 713(a); Del.Gen.Corp.L. § 144; *see also Welch v. Importers and Traders' Nat'l Bank*, 122 N.Y. 177, 189, 25 N.E. 269 (1890).

■ The district court did not err in rejecting Health–Chem's efforts to introduce evidence of an alleged oral understanding that its liability under the Settlement Agreement would be limited by the terms of the Indenture applicable to dividends, redemptions and distributions. The Settlement Agreement was prepared under the supervision of competent attorneys and is complete and unambiguous. Where, as

here, the alleged oral limitation bears so directly upon the contractual obligation of payment, it is reasonable to expect that, if a limitation had been agreed upon, it would have been incorporated in the written agreement. *Fogelson v. Rackfay Constr. Co.,* 300 N.Y. 334, 338–39, 90 N.E.2d 881 (1950).

Likewise, the district court did not err in denying Health–Chem's motion to amend its complaint in response to Baker's summary judgment motion to assert the defenses of mutual mistake, commercial impracticability, and frustration of purpose. Although Fed.R.Civ.P. 15(a) provides that leave to amend should be given freely when justice so requires, where, as here, there is no merit in the proposed amendments, leave to amend should be denied. *Friedman v. Chesapeake & Ohio Ry. Co.,* 261 F.Supp. 728, 734 (S.D.N.Y.1966), *aff'd as to this point on opinion below,* 395 F.2d 663, 664 (2d Cir.1968) (per curiam), *cert. denied,* 393 U.S. 1016, 89 S.Ct. 619, 21 L.Ed.2d 561 (1969); *Love v. New York State Dep't of Environmental Conservation,* 529 F.Supp. 832, 845 (S.D.N.Y.1981).

■ The purpose of including the "adjustment amount" clause in the Settlement Agreement was to protect Baker against fluctuation in the price of the stock, thus placing the risk of a decline in price upon Health–Chem. Obviously, neither party could predict with certainty the future progress of the market, particularly as it applied to Health–Chem stock. Under the circumstances, the parties cannot be held to have proceeded under a mutual mistake. *See Beecher v. Able,* 575 F.2d 1010, 1015–16 (2d Cir.1978); *Leasco Corp. v. Taussig,* 473 F.2d 777, 781–82 (2d Cir.1972); 13 *Williston on Contracts* § 1543, at 75 (3d ed. 1970). Moreover, the fact that the subsequent decline in the price of its stock made Health–Chem's performance of the contract more onerous does not establish a basis for a defense of frustration of purpose or commercial impracticability. *See W.R. Grace & Co. v. Local Union 759,* 461 U.S. 757, 768 n. 12, 103 S.Ct. 2177, 2185 n. 12, 76 L.Ed.2d 298 (1983); *Canfield v. Reynolds,* 631 F.2d 169, 177 (2d Cir.1980);

*407 E. 61st Garage, Inc. v. Savoy Fifth Ave. Corp.,* 23 N.Y.2d 275, 281–82, 296 N.Y.S.2d 338, 244 N.E.2d 37 (1968). Health–Chem makes no claim that it took virtually every action within its power to perform its duties under the contract and therefore cannot assert the defense of impossibility. *See Kama Rippa Music, Inc. v. Schekeryk,* 510 F.2d 837, 842–43 (2d Cir. 1975).

■ This action was commenced in state court on or about August 1, 1988 and was removed to federal court on August 12, 1988. On March 13, 1990, two weeks after Baker's motion for summary judgment was granted, Health–Chem moved "upon the accompanying memorandum of law" for an order joining Bankers Trust Company, the trustee under the Indenture, as an indispensable party, on the ground that without such joinder complete relief could not be granted among the parties and Health–Chem might be subject to multiple obligations. The district court did not err in denying this tardy motion. *See Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 110 & n. 4, 88 S.Ct. 733, 738 & n. 4, 19 L.Ed.2d 936 (1968). Although, as Health–Chem concedes, the judgment herein is not binding on Bankers Trust, it constitutes complete relief as between Health–Chem and Baker. The speculative possibility of future litigation as between Health–Chem and Bankers Trust, the substance of which was not spelled out in Health–Chem's motion papers, furnishes no basis for compulsory joinder of Bankers Trust. *See Sales v. Marshall,* 873 F.2d 115, 121 (6th Cir.1989); *LLC Corp. v. Pension Benefit Guaranty Corp.,* 703 F.2d 301, 305 (8th Cir.1983); *Coastal Modular Corp. v. Laminators, Inc.,* 635 F.2d 1102, 1107–08 (4th Cir.1980); *Air-Exec, Inc. v. Two Jacks, Inc.,* 584 F.2d 942, 944–45 (10th Cir.1978).

■ As stated above, the 1987 Outline of Settlement provided for the sale of Baker's stock and payment by Health–Chem [not Speiser] of the "adjustment amount." Because the Outline of Settlement also referred to disputes as between Baker and Speiser, Speiser, of necessity, signed the

Outline. Now, upon Health–Chem's refusal to pay the adjustment amount, Baker seeks recovery from Speiser of the money involved, basing his claim solely upon the terms of the Outline of Settlement. The district court correctly rejected Baker's claim.

■■■ We need not decide whether, as Baker contends, the Outline of Settlement, which provided that it would "be incorporated into a definitive agreement to be negotiated and executed," was itself a binding agreement. *Cf. Jim Bouton Corp. v. Wm. Wrigley Jr. Co.*, 902 F.2d 1074, 1081 (2d Cir.1990). The Settlement Agreement subsequently entered into provides that it embodies the entire agreement and supersedes all prior agreements and understandings. The word "supersede" has been defined at various times to mean "set aside," "annul," "displace," "make void," and "repeal." *City of Los Angeles v. Gurdane*, 59 F.2d 161, 163 (9th Cir.1932); 83 C.J.S. *Supersede* 888–89; *Black's Law Dictionary* 1607 (rev. 4th ed. 1968). When the parties to a contract enter into a new agreement that expressly supersedes the previous agreement, the previous agreement is extinguished, thereby reducing the remedy for breach to a suit on the new agreement. *Citigifts, Inc. v. Pechnik*, 112 A.D.2d 832, 492 N.Y.S.2d 752 (1985) (mem.), *aff'd mem.*, 67 N.Y.2d 774, 500 N.Y.S.2d 643, 491 N.E.2d 1100 (1986); *Northville Indus. Corp. v. Fort Neck Oil Terminals Corp.*, 100 A.D.2d 865, 867, 474 N.Y.S.2d 122 (1984) (mem.), *aff'd mem.*, 64 N.Y.2d 930, 488 N.Y.S.2d 648, 477 N.E.2d 1102 (1985); *Jefferson Salt Mining Co. v. Empire Box Corp.*, 41 Del. 386, 23 A.2d 106 (1941), *aff'd*, 42 Del. 432, 36 A.2d 40 (1944); *see Protective Closures Co. v. Clover Indus., Inc.*, 394 F.2d 809, 812 (2d Cir.1968).

To sum up, we have considered all of the arguments of the parties and we find no errors meriting reversal. The judgment of the district court is in all respects affirmed.