Steven ELMOWITZ, Plaintiff,

v.

EXECUTIVE TOWERS AT LIDO, LLC, Shelly Knoll, Carolyn Fried, Susan Tomback, Janice Genser, Stuart Walton, and Samuel Walton, Defendants.

No. 07–CV–4537 (JS)(AKT).

United States District Court, E.D. New York.

July 22, 2008.

time. For the reasons discussed herein, Defendants' motion is DENIED in part, and GRANTED in part.

Evan S. Schwartz, Esq., Michael Paneth, Esq., Quadrino & Schwartz, Garden City, NY, for Plaintiff.

Herbert Rubin, Esq., Herzfeld and Rubin P.C., New York, NY, for Defendants.

## BACKGROUND

In October 2003, Plaintiff and his father entered into a two-year lease agreement with Executive Towers for an apartment unit within its building. (Am.Compl.¶ 19.) The lease was renewed once in 2005, and Plaintiff alleges that in July 2007, Defendant Knoll expressed to him that Executive Towers would renew the lease again for a third two-year term. (*Id.* ¶¶ 20, 22–23.) Plaintiff states that on the basis of this assurance from Defendants, he did not seek other living arrangements and requested the installation of a new air conditioner in the apartment at his own expense, to which the Defendants agreed. (*Id.* ¶¶ 25–27.) Plaintiff claims that following the installation of the new air conditioner, Defendant Knoll requested permission to enter the apartment, with an insurance adjuster, in order to inspect the installation. (*Id.* ¶ 30.) Plaintiff claims that he agreed to this request, but when he allowed them into the unit, there was no insurance adjuster present. (*Id.* ¶ 31–32.) Instead, Plaintiff alleges that Defendant Fried and the assistant superintendent entered his apartment and took multiple pictures of the entire apartment unit, refusing to leave when asked to do so by Plaintiff. (*Id.* ¶¶ 33–36.) Subsequent to this visit by Defendant Fried, Plaintiff re-

*MEMORANDUM AND ORDER*

SEYBERT, District Judge:

Plaintiff Steven Elmowitz ("Plaintiff") commenced this action on October 20, 2007 against Executive Towers at Lido, LLC, ("Executive Towers"), Shelly Knoll, Carolyn Fried, Susan Tomback, Janice Genser, Stuart Walton, and Samuel Walton (the "Individual Defendants"), all of whom are employees or members of Executive Towers (collectively "Defendants"), alleging violations of the Fair Housing Act, 42 U.S.C. §§ 3604(f) and 3617 ("FHA"), and the New York Human Rights Law ("NYHRL"), in addition to various state law claims.[1] Presently before the Court is Defendants' motion to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted.[2] In the alternative to granting their motion, Defendants request that the Court abstain from adjudicating the case at this

---

**1.** Plaintiff alleges violations of the FHA against all Defendants. Similarly, violations of N.Y. Exec. Law §§ 296(5)(a)(1) and 296(7) are alleged against all Defendants, while violations of N.Y. Exec. Law § 296(6) are alleged against only the Individual Defendants. Plaintiff further alleges claims of trespass against Executive Towers and Defendant Fried, intentional infliction of emotional distress against all Defendants, and promissory estoppel against Executive Towers.

**2.** Defendants moved to dismiss the original Complaint pursuant to Rule 12(b)(6), in addition to requesting summary judgment. However, prior to that motion being decided, on November 30, 2007, Plaintiff filed an Amended Complaint. The Court then determined that the previous motion to dismiss had become moot, and denied the motion for summary judgment for failure to comply with this Court's Individual Rules.

ceived a Notice to Cure and an Amended Notice to Cure, stating that he was in violation of the "Objectionable Conduct" clause of his lease.[3] (*Id.* ¶¶ 37, 40.) The Amended Notice also stated that if he failed to cure by August 10, 2007, his tenancy would be terminated. (*Id.* ¶ 41.) In accordance with the Amended Notice to Cure, Plaintiff claims that Defendants requested to inspect the apartment, but failed to do so at any point before or after August 10, 2007, the deadline for the cure period. (*Id.* ¶¶ 42–43.)

On or about September 9, 2007, Plaintiff filed a complaint with the United States Department of Housing and Urban Development ("HUD") pursuant to 42 U.S.C. § 3610(a), alleging discrimination on the basis of a disability. (*Id.* ¶ 52.) Plaintiff alleges that shortly thereafter, Defendants told him that they would not extend his lease upon its expiration, despite Plaintiff's previously expressed intention to exercise his option to renew the lease. (*Id.* ¶¶ 54, 61–63.)

Plaintiff allegedly suffers from "Bipolar Disorder, Depression, and Social Anxiety Disorder," which impair "his ability to work, sleep, and maintain social relationships." (*Id.* ¶ 8.) Plaintiff also claims to have been clinically diagnosed with these mental disabilities, and that as a result, he receives long-term disability insurance benefits. (*Id.* ¶ 10.) Plaintiff also contends that a report to the Defendants from the installer of the air conditioner, describing an "abundance of prescription medication bottles," "confirmed what Defendants already knew—that Plaintiff suffered from a mental disability." (*Id.* ¶¶ 28–29.) Plaintiff alleges that because of his disability, Defendants began taking steps in a "discriminatory pattern" to

force him to vacate the premises, in violation of the FHA and NYHRL. (*Id.* ¶¶ 59, 69, 84.) Additionally, Plaintiff claims that on numerous occasions he was taunted and harassed in public and In private by Defendant Fried as a result of his disability. (*Id.* ¶¶ 55–57.)

## DISCUSSION

### I. Standard Of Review Under Rule 12(b)(6)

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must plead facts sufficient "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* — U.S. ——, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The complaint must "raise [the] right to relief above the speculative level," *id.* at 1965, precluding those claims that cannot be "nudged ... across the line from conceivable to plausible," *id.* at 1974. While the complaint "does not need detailed factual allegations," the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964–65 (citations omitted).

The Second Circuit has construed *Bell Atlantic* to establish "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" *Iqbal v. Hasty,* 490 F.3d 143, 157–58 (2d Cir.2007) (emphasis in original). However, in applying this standard, the district court must still accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of Plaintiff. *See Cleveland v. Caplaw Enter.,* 448 F.3d 518, 521 (2d Cir.

---

**3.** Specifically, the Notice to Cure alleged that the apartment was a "serious fire hazard," and as a result of significant debris and clutter present in the unit, was "detrimental to the health and safety of you and others." (*Id.* ¶¶ 38–39.)

2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir.2005).

■ Additionally, as a motion to dismiss challenges only the sufficiency of the complaint, "the Court must limit its analysis to the four corners of the complaint." *Hunt v. Pritchard Indus., Inc.*, No. 07–CV–0747, 2007 WL 1933904, at *3, 2007 U.S. Dist. LEXIS 47749, at *10 (S.D.N.Y. July 3, 2007) (internal quotation marks and citation omitted). Generally, "[c]onsideration of extraneous material in judging the sufficiency of the complaint is at odds with the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2)," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir.2002). Nevertheless, the terms and effects of documents on which a plaintiff relies in drafting the complaint can also be considered when deciding a motion to dismiss.[4] *See id.* at 153.

## II. *Plaintiff's Claims*

### A. *Violations Of The FHA § 3604(f) & NYHRL Section 296(5)*

■ The FHA makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." 42 U.S.C. § 3604(f). To establish a prima facie case of discrimination under Section 3604(f), Plaintiff must allege that (1) he is a member of a protected class, (2) he sought and was qualified to rent or purchase the housing, (3) he was rejected, and (4) "the housing opportunity remained available to other renters or purchasers." *Mitchell v. Shane*, 350 F.3d 39,

47 (2d Cir.2003) (citing *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1038 (2d Cir.1979)). Even though typical FHA claims apply to those seeking to rent or purchase housing, the "language of the statute is broad enough to encompass an existing tenant who is denied access to [his] dwelling because of a handicap." *Roffman v. Knickerbocker Plaza Assocs.*, No. 04–CV–3885, 2008 WL 919613, at *14, 2008 U.S. Dist. LEXIS 32047, at *40 (S.D.N.Y. Mar. 31, 2008).

Here, Plaintiff alleges that he is handicapped under the FHA as a result of being mentally and emotionally disabled. (Am. Compl.¶ 9, 65.) According to the FHA, a "handicap" is defined as "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h). The Department of Housing and Urban Development provides further guidance, stating that major life activities are "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 24 C.F.R. § 100.201. Additionally, in the context of a claim under the Americans with Disabilities Act, 42 U.S.C. § 12182 ("ADA"), the Supreme Court provides guidance on the "substantially limits" language in the statute; interpreting it to mean that the disability must "prevent[ ] or severely restrict[ ]" the individual in performing major life activities.[5] *See Toyota Motor Mfg., Kentucky, Inc. v.*

---

4. Defendants submit a number of exhibits in conjunction with their motion to dismiss. However, the majority of these exhibits are inappropriate for a motion to dismiss, and would have been more appropriately filed in conjunction with a motion for summary judgment, in accordance with the rules of this Court.

5. As the language in the ADA mirrors that found in the FHA in all material respects, courts often look to the ADA for guidance in interpreting the FHA. *See Feeland v. Sisao*, No. 07–CV–3741, 2008 WL 906746, at *4 n. 4 (E.D.N.Y. Apr. 1, 2008); *Resnick v. Cent. Park W. Condo.*, No. 07–CV–1988, 2007 WL 2375750, at *2 n. 1 (S.D.N.Y. Aug. 14, 2007).

*Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002).

■ Examining the Amended Complaint under the standard set out by *Iqbal* and *Bell Atlantic,* it is apparent that Plaintiff has satisfied his burden of pleading. Plaintiff states that he suffers from bipolar disorder, depression, and social anxiety, all of which are mental impairments. (Am. Compl.¶ 8.) Plaintiff also alleges that his disability has impaired his ability to work, which is a major life activity under 24 C.F.R. § 100.201. (*Id.*) Additionally, Plaintiff alleges that he "has been clinically diagnosed with and receives long-term disability insurance benefits on account of his mental disability," from which it is reasonable to infer that his disability prevents or severely restricts his ability to work. (*Id.* ¶ 10.) Thus, Plaintiff has alleged facts sufficient to show that it is plausible that he is disabled under the FHA, and as such, is a member of a protected class.

Plaintiff also sufficiently pleads the remaining elements of a prima facie case under the FHA. It is clear that Plaintiff intended to renew his lease, and undoubtedly plausible that he was qualified to rent the apartment, as he has already renewed his lease once in the past. (*Id.* ¶ 20, 62.) Similarly, it is apparent that Plaintiff was not permitted to renew his lease, and that Executive Towers, as the operator of a large apartment complex, intends to continue to rent the apartment to others. (*Id.* ¶ 63, 68.) Viewed together, in the light most favorable to Plaintiff, the Amended Complaint alleges facts sufficient to establish a right to relief "above the speculative level." *Bell Atl. Corp.,* 127 S.Ct. at 1965.

Similarly, claims of discrimination under NYHRL Section 296(5) are analyzed using the same approach as the FHA. *See Barkley v. Olympia Mortgage Co.,* No. 04–CV–875, 2007 WL 2437810, at *18, 2007 U.S. Dist. LEXIS 61940, at *56–57 (E.D.N.Y.

Aug. 22, 2007) ("the standard relevant to [the NYHRL] claims parallel those applicable under the Fair Housing Act"). As such, Plaintiff's claim under Section 296(5) is sufficiently pleaded.

**B.** *Violations Of FHA Section 3617 & NYHRL Section 296(7)*

■ To establish a prima facie case of retaliation under Section 3617 of the FHA, Plaintiff must allege that (1) he was engaged in a protected activity, (2) Defendants were aware of this activity, (3) Defendants took adverse action against Plaintiff, and (4) a causal connection exists between the protected activity and the adverse action. *See Miller v. Bd. of Managers of Whispering Pines at Colonial Woods Condo. II,* 457 F.Supp.2d 126, 131 (E.D.N.Y.2006) (citing *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown,* 294 F.3d 35, 54 (2d Cir.2002)). "Protected activity under the FHA refers to 'action taken to protest or oppose statutorily prohibited discrimination.'" *Miller,* 457 F.Supp.2d at 131 (quoting *Cruz v. Coach Stores,* 202 F.3d 560, 566 (2d Cir. 2000)).

■ Here, Plaintiff alleges he is a mentally disabled individual engaged in the enjoyment of his Fair Housing rights, including filing a complaint with HUD for discrimination. (Am.Compl.¶ 52.) Shortly after Plaintiff filed the discrimination complaint with HUD, Plaintiff alleges that Executive Towers refused to renew his lease. (*Id.* ¶ 54.) Additionally, Plaintiff alleges that when the air conditioner installer reported an "abundance" of prescription medication bottles in the apartment, "it confirmed what Defendants already knew—that Plaintiff suffered from a mental disability." (Am.Compl.¶¶ 28–29.) Further, Plaintiff claims that at one point, he told Defendant Fried that "in light of his disability, her discriminatory acts were

unlawful." (*Id.* ¶ 58.) Assuming the truth of the allegations, Plaintiff sufficiently states a claim for retaliation under the FHA.

As violations of NYHRL Section 296(7) are examined in the same manner as violations under the ADA, *see Fleming v. Verizon New York, Inc.,* No. 03–CV–5639, 2006 WL 2709766, *18, 2006 U.S. Dist. LEXIS 68632, at *54 (S.D.N.Y. Sept. 22, 2006), and since the ADA is used as guidance in interpreting the FHA, see *supra* footnote 5, Plaintiff also sufficiently states a claim under Section 296(7).

### C. *Violations Of NYHRL Section 296(6)—Aiding And Abetting*

Next is Plaintiff's cause of action against the Individual Defendants for aiding and abetting discriminatory conduct in violation of NYHRL Section 296(6).[6] The Second Circuit has interpreted Section 296(6) to establish liability for aiding and abetting only when the defendant in question " 'actually participates in the conduct giving rise to a discrimination claim.' " *Chanval Pellier v. British Airways, Plc,* No. 02–CV–4195, 2006 WL 132073, at *12, 2006 U.S. Dist. LEXIS 3219, at *41 (E.D.N.Y. Jan. 17, 2006) (quoting *Feingold v. New York,* 366 F.3d 138, 157–58 (2d Cir.2004)).

▪ Here, Plaintiff makes no specific allegations involving Defendants Tomback, Genser, Stuart Walton, or Samuel Walton throughout the Amended Complaint, aside from setting them out as employees of Executive Towers. (Am.Compl.¶¶ 14–16.) He does vaguely allege that each Individual Defendant was "involved" in the decision to retaliate against him for asserting his fair housing rights, but totally fails to allege any specific facts to render his claims

against these Defendants plausible. (*Id.* ¶ 18.)

▪ In comparison, Plaintiff does allege sufficient facts to state a claim of aiding and abetting under Section 296(6) against Defendants Fried and Knoll. Plaintiff alleges that Defendant Knoll is the one who contacted him about gaining access to his apartment, so that an insurance adjuster could inspect the newly installed air conditioner. (*Id.* ¶ 30.) Plaintiff also alleges that Defendant Fried took the photos mentioned in the Amended Complaint, which allegedly contributed to Defendants' decision not to renew his lease. (*Id.* ¶¶ 33–40.) Additionally, Plaintiff claims that Defendant Fried hit him with her phone, and taunted him both in public and in private. (*Id.* ¶¶ 55–58.) Taken as true, these allegations support the claim that both Defendants Fried and Knoll aided and abetted discriminatory conduct, as they both actually participated in the events giving rise to the claim of discrimination. Consequently, Defendants' motion to dismiss the aiding and abetting claim against Defendants Tomback, Genser, Stuart Walton, and Samuel Walton is GRANTED, and as against Defendants Knoll and Fried, is DENIED.

### D. *Trespass Against Executive Towers And Defendant Fried*

▪ To establish a prima facie case of trespass under New York law, Plaintiff must show that Defendants either entered without permission, or if permission was granted, "refused 'to leave after permission to remain ha[d] been withdrawn.' " *Long Island Gynecological Serv's, P.C. v. Murphy,* 298 A.D.2d 504, 748 N.Y.S.2d 776, 777 (2d Dep't 2002) (alteration in orig-

---

**6.** Notably, though Defendants moved to dismiss the Amended Complaint In its entirety, neither Plaintiff nor Defendants devote any of their efforts whatsoever towards this claim, as It is not even mentioned outside of the Amended Complaint.

inal) (quoting *Rager v. McCloskey,* 305 N.Y. 75, 79, 111 N.E.2d 214 (1953)).

Defendants' reliance on the lease to establish that the trespass claim is insufficient is misplaced. While the lease does grant the landlord permission to enter in certain circumstances, the relevant portion of the lease, paragraph 15, is not applicable in the present situation.[7] This paragraph allows the landlord entry only in four specific situations, in addition to when entry is "necessary or allowed by law," or "in emergencies." (Rubin Affirm in Supp. Mot. to Dismiss, Ex. B ¶ 15.) Based on the facts as alleged in the Amended Complaint, none of the situations permitting entry pursuant to the lease appear relevant.

■■■ Plaintiff states that Defendant Fried and the assistant superintendent, acting as agents of Executive Towers, entered his apartment with his permission, and proceeded to remain after he had asked them to leave. (Am.Compl.¶¶ 32–33, 36, 99–100.) Accordingly, Plaintiff alleges facts sufficient to state a claim for trespass.

### E. *Intentional Infliction Of Emotional Distress*

■■■ In addition to his other claims, Plaintiff alleges intentional infliction of emotional distress ("IIED") against all Defendants. (*Id.* ¶¶ 103–106.) There are four elements in a prima facie case of IIED, beginning with a requirement that the conduct be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

*Howell v. New York Post Co.,* 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 612 N.E.2d 699, 702 (1993) (internal quotation marks and citation omitted). This first requirement serves to "filter[ ] out petty and trivial complaints that do not belong in court," and is susceptible to determination as a matter of law. *See id.* at 121–22, 596 N.Y.S.2d 350, 612 N.E.2d 699.

Very few claims satisfy the extreme and outrageous requirement of a IIED claim. *Id.* at 122, 596 N.Y.S.2d 350, 612 N.E.2d 699. In fact, none of the IIED claims considered by the New York Court of Appeals have survived because the conduct was not sufficiently outrageous. *See id.; see also Koulkina v. City of New York,* 559 F.Supp.2d 300, 323–24 (S.D.N.Y.2008). To be sure, however, there are circumstances under which New York courts have found conduct to be sufficiently extreme and outrageous to withstand a motion to dismiss. Examples of such conduct are found in *Roach v. Stern,* 252 A.D.2d 488, 675 N.Y.S.2d 133, 136 (2d Dep't 1998), where the defendant, during a live radio broadcast, "allegedly handled and made disrespectful comments about the cremated remains of [the] plaintiff's sister," and *Bunker v. Testa,* 234 A.D.2d 1004, 652 N.Y.S.2d 181, 182 (4th Dep't 1996), where the defendant allegedly threatened the plaintiff and her children after following them home, stating that he knew where they went to school. *See Koulkina,* at 323–24 (listing cases where extreme and outrageous conduct has and has not been found). More recently, the New York Supreme Court, New York County, denied a motion to dismiss where the defendant allegedly repeatedly physically abused

---

**7.** As noted above, the Court can consider documents that are integral to the Amended Complaint. *See Chambers,* 282 F.3d at 153. Here, Plaintiff clearly relies upon the terms and effect of his lease in drafting the Amended Complaint, alleging that he has a right to renew his tenancy pursuant to his lease, and that he has fulfilled all of his obligations under the lease. (Am.Compl.¶¶ 21, 61.)

plaintiff, a domestic employee, and threatened the plaintiff with future physical violence. *Gibson v. Campbell,* 847 N.Y.S.2d 901, 16 Misc.3d 1123, 2007 WL 2316477, at *1 (2007). In denying the motion, the court reasoned that the plaintiff alleged "not merely petty annoyances, but conduct which allegedly included physical assault substantially greater than the minimum that would constitute battery and threats that allegedly put [plaintiff] in immediate apprehension of imminent harm." *Id.* In comparison, New York courts have held that the extreme and outrageous requirement was not satisfied in *Khan v. Reade,* 7 A.D.3d 311, 776 N.Y.S.2d 281, 282 (1st Dep't 2004), where the defendant allegedly filed a police report against the plaintiff, an employee, based on a suspicion she was stealing merchandise, *Ruggiero v. Contemporary Shells, Inc.,* 160 A.D.2d 986, 554 N.Y.S.2d 708, 709 (2d Dep't 1990), where the defendant "allegedly harassed and discharged the plaintiff because she was pregnant," or *Saunders v. Taylor,* 6 Misc.3d 1015, 800 N.Y.S.2d 356, 2003 WL 24002776, at *3 (N.Y.Sup.Ct.2003), where the defendant punched plaintiff in the face and yelled vulgarities at her.

In the cases that involved some kind of physical altercation, as is alleged here, the courts seem to focus on the extent of the assault, whether it was a one time occurrence or a pattern of behavior, and whether the plaintiff felt she was in imminent harm. *See Saunders,* 6 Misc.3d 1015, 800 N.Y.S.2d 356, 2003 WL 24002776, at *3 (noting that the plaintiff's "alleged conduct falls squarely within the ambit for traditional tort liability for battery[,]" suggesting that an IIED claim would not be applicable in such circumstances); *Gibson,* 16 Misc.3d 1123, 847 N.Y.S.2d 901, 2007 WL 2316477, at *1 (emphasizing the substantial amount of physical abuse alleged). The allegations supporting Plaintiff's IIED claim do not suggest a pattern of physical abuse that placed Plaintiff in fear of imminent harm. Plaintiff alleges that Defendant Fried took photographs of his person, at times placing the camera "in very close proximity to [his] face," taunted him in public by shouting derogatory remarks, and "hit [him] multiple times with her office telephone." (Am.Compl.¶¶ 35, 55–58.) Notwithstanding the fact that Plaintiff does not allege any conduct at all on the part of four of the six Individual Defendants, none of Defendant Fried's conduct complained of in the Amended Complaint approaches the level of "extreme and outrageous," let alone "atrocious [ ] and utterly intolerable." *Howell,* 596 N.Y.S.2d 350, 612 N.E.2d at 702.

Assuming, *arguendo,* that Defendant Fried's conduct does constitute extreme and outrageous behavior, Plaintiff has done nothing more than recite the remaining three elements of a IIED claim: "intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (ii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Koulkina,* at 323–24. Such pleadings are insufficient to state a plausible cause of action for IIED. As discussed more fully below, Plaintiff is granted another opportunity to state a claim for IIED. Plaintiff is cautioned, however, that absent allegations of conduct that is "atrocious[ ] and utterly intolerable in a civilized community," Plaintiff's IIED claim will be dismissed with prejudice.

**F.  *Promissory Estoppel***

Lastly, Plaintiff contends that he is entitled to recovery on a theory of promissory estoppel against Executive Towers. To establish a prima facie case of promissory estoppel under New York law, Plaintiff must allege three things: "1) a clear and unambiguous promise; 2) rea-

**380**

sonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir.2000). However, as the alleged promise in this instance relates to an interest in land for a duration longer than one year, the New York Statute of Frauds is applicable. *See* N.Y. Gen. Oblig. Law § 5–703 ("A contract for the leasing for a longer period than one year, ... of any real property, or an interest therein, is void unless ... in writing."). In order to rely on the equitable doctrine of promissory estoppel to overcome the Statute of Frauds, Plaintiff must show that the denial of relief requested would be "unconscionable." *Mobile Data Shred, Inc. v. United Bank of Switzerland*, No. 99–CV–10315, 2000 WL 351516, at *4, 2000 U.S. Dist. LEXIS 4252, at *13 (S.D.N.Y. April 3, 2000) (internal quotation marks omitted) (citing *Merex A.G. v. Fairchild Weston Sys., Inc.*, 29 F.3d 821, 826 (2d Cir.1994)). That is, Plaintiff must show injuries "beyond those that flow naturally" from the defendant's breach; and in the absence of " 'egregious' circumstances, courts have consistently rejected promissory estoppel claims." *Mobile Data Shred, Inc. v. United Bank of Switzerland*, 2000 WL 351516, at *4–5, 2000 U.S. Dist. LEXIS 4252, at *13–14.

■ Notwithstanding the other requirements, Plaintiff has not alleged any facts to show that denial of his relief would be unconscionable. At most, Plaintiff alleges that he suffered an unspecified "detriment" as a result of his reliance on the promise to renew the lease. (Am. Compl.¶ 111.) Drawing a reasonable inference in Plaintiffs favor leads the Court to assume that the detriment suffered is the loss of housing resulting from Executive Towers' decision not to renew the lease. To this end, it could hardly be said that this is not the sort of injury that would flow naturally from the breach of an oral contract to renew a lease. However, as

the immediate situation allegedly involves discriminatory actions on the part of the Defendants, it is possible that there are egregious circumstances sufficient to establish unconscionable injury. Yet, Plaintiff failed to allege with any specificity the detriment suffered. Accordingly, Plaintiff has not sufficiently stated a right to relief based on promissory estoppel.

### III. *Defendants' Request For Abstention*

In the alternative to granting their motion to dismiss, Defendants request that the Court abstain from adjudicating this matter due to an ongoing state court landlord/tenant proceeding. Defendants provide no doctrinal support for their request for abstention, aside from a handful of quotes stating that landlord/tenant actions are more appropriate for adjudication in state court.

Notably, however, the cases Defendants quote and rely upon to support their position do not deal with abstention at all. In quoting the court's entire discussion of a landlord/tenant dispute in *MTI Residential Services v. Alston*, No. 07–CV–2002, 2007 WL 1695161, *2–3, 2007 U.S. Dist. LEXIS 42943, *6–7 (E.D.N.Y. May 31, 2007), Defendants completely fail to mention that the underlying case was a summary proceeding seeking unpaid rent and eviction that was *removed* to federal court. *Id.* at 2007 WL 1695161, at *1, 2007 U.S. Dist. LEXIS 42943, at *1. Similarly, Defendants cite *United Mutual Houses, L.P. v. Andujar*, 230 F.Supp.2d 349 (S.D.N.Y. 2002), and *Glen 6 Associates, Inc. v. Dedaj*, 770 F.Supp. 225 (S.D.N.Y.1991), both of which are strikingly similar to *MTI Residential Services* in that they were summary proceeding actions removed to federal court; none of these cases mentioned invoke any question of a federal right or any federal issues.

Moreover, after citing *United Mutual Houses* in support of their argument for

abstention, Defendants neglect to notice that the tenant filed a subsequent action in federal district court alleging violations of the FHA. *See Andujar v. Hewitt,* 02–CV–2223, 2002 WL 1792065, 2002 U.S. Dist. LEXIS 14294 (S.D.N.Y. Aug. 2, 2002). In the FHA action, the landlord's request for abstention, which is nearly identical to the request here, was denied. *Id.* Similar to *Andujar,* Defendants seemingly ignore the fact that this suit was brought in federal court to protect Plaintiffs' federal fair housing rights, and as such is not inherently and exclusively related to landlord-tenant issues, which are the subject of the state action.

Mindful that abstention is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it," *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959), and of the Defendants' failure to support their request, the Court DENIES the request for abstention.

## IV. *Defendants' Requests For Sanctions*

Throughout their moving papers and memoranda, Defendants urge that "sanctions are appropriate" for the commencement of this "frivolous" action. (Defs.' Mem. in Supp. Mot. to Dismiss 2, 9, 14; Rubin Affirm in Supp. Mot. to Dismiss ¶ 25; Def.'s Reply Mem. 8.) However, sanctions pursuant to Rule 11(c) are not granted as a matter of course following a request for their imposition; it is within the district court's discretion whether to grant them or not. *See Perez v. Posse Comitatus,* 373 F.3d 321, 325 (2d Cir.2004). Moreover, the moving party must serve the motion for sanctions upon the opposing party at least twenty-one days before filing with the district court. Fed.R.Civ.P. 11(c)(1)(A). This prerequisite gives the non-moving party an opportunity to change the objectionable pleadings to pre-

vent the imposition of sanctions. *See Team Obsolete Ltd. v. A.H.R.M.A. Ltd.,* 216 F.R.D. 29, 43–44 (E.D.N.Y.2003) (finding that plaintiffs were sheltered from a Rule 11 motion because they sought leave to amend within the agreed upon safe-harbor period).

Here, Defendants have failed to take any steps *whatsoever* in accordance with Rule 11 in seeking sanctions, nor does it appear that such a request has any merit. As a result, their requests for sanctions against Plaintiff are DENIED.

## V. *Leave To Amend*

Plaintiff additionally requests that he be granted leave to amend any pleadings that the Court deems insufficient, pursuant to Rule 15(a)(2). Defendants did not object to Plaintiff's request under Rule 15(a)(2). Generally, leave to amend is granted freely, unless there is undue delay, bad faith, futility, or prejudice to the non-moving party. *See Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.,* 404 F.3d 566, 603–04 (2d Cir.2005); *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995). "A proposed amendment is futile when it fails to state a claim upon which relief can be granted," *Health-Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990), and a determination of futility is made by applying the same standards as a motion to dismiss under Rule 12(b)(6). *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991).

As noted, there are no allegations of undue delay, bad faith, prejudice, or futility. Accordingly, leave to amend should be freely granted. Plaintiff is granted leave to amend the dismissed claims, namely those for aiding and abetting discrimination under Section 296(6) of the NYHRL against Defendants Tomback, Genser, Stuart Walton, and Samuel Walton, for intentional infliction of emotional distress, and based on promissory estoppel.

382

## CONCLUSION

For the reasons set forth above, the Court DENIES Defendants' motion to dismiss Plaintiff's (1) housing discrimination claim under 42 U.S.C. § 3602(h) and N.Y. Exec. Law § 296(5), (2) retaliation under 42 U.S.C. § 3617 and N.Y. Exec. Law § 296(7), (3) aiding and abetting claim under N.Y. Exec. Law § 296(6) against Defendants Fried and Knoll, and (4) cause of action in trespass. Accordingly, Defendants' motion is GRANTED, with leave to amend, in respect to Plaintiff's claims of (a) aiding and abetting under N.Y. Exec. Law. § 296(6) against Defendants Tomback, Genser, Stuart Walton, and Samuel Walton, (b) intentional infliction of emotional distress, and (c) promissory estoppel. Additionally, Defendants' requests for abstention and sanctions are DENIED. Plaintiff shall file a Second Amended Complaint in accordance with this Order within 30 days of the date of this Order.

SO ORDERED.